# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*Commonwealth Edison Co. v. Illinois Commerce Comm'n*, 2013 IL App (2d) 120334

---

Appellate Court
Caption

COMMONWEALTH EDISON COMPANY, Petitioner, v. ILLINOIS COMMERCE COMMISSION; THE PEOPLE *ex rel.* LISA MADIGAN, Attorney General; AARP; AARP ILLINOIS; BLUESTAR ENERGY SERVICES, INC.; BUILDING OWNERS AND MANAGERS ASSOCIATION OF CHICAGO; CHICAGO TRANSIT AUTHORITY; CITIZENS UTILITY BOARD; CHRYSLER, LLC; THE CITY OF CHICAGO; THE COMMERCIAL GROUP (styled as such collectively from the following petitioners: Best Buy Company, Inc.; J.C. Penney Corporation, Inc.; Macy's, Inc.; Walmart Stores, Inc.); CONSTELLATION ENERGY COMMODITIES GROUP, INC.; CONSTELLATION NEWENERGY, INC.; UNITED STATES DEPARTMENT OF ENERGY; INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL UNION NO. 15, AFL-CIO; ILLINOIS INDUSTRIAL ENERGY CONSUMERS, a/k/a IIEC (styled as such collectively from the following petitioners: Abbott Laboratories, Inc.; Arcelormittal USA; Caterpillar, Inc.; Citgo, Inc.; Corn Products International, Inc.; Daimler Chrysler Corporation; Enbridge Energy, LP; Exxonmobil; Ford Motor Company; Merchandise Mart; Sterling Steel Company, LLC; Thermal Chicago Cooling, Inc.; Citco Inc.; General Iron Industries, Inc.); NORTHEAST ILLINOIS REGIONAL COMMUTER RAILROAD CORPORATION, d/b/a Metra; NUCOR STEEL KANKAKEE, INC.; THE KROGER COMPANY; THE COALITION TO REQUEST EQUITABLE ALLOCATION OF COSTS TOGETHER, a/k/a "REACT" (styled as such collectively from the following petitioners: A. Finkl and Sons Company; Alsip Paper Condominium Association; Aux Sable Liquid Products, LP; The City of Chicago; Commerce Energy, Inc.; Flint Hills Resources, LLC; Integrys Energy Services, Inc.; Metropolitan Water Reclamation District of Greater Chicago; PDV Midwest Refining, LLC; United Airlines, Inc.; Wells Manufacturing, Inc.); RETAIL ENERGY SUPPLY ASSOCIATION, a/k/a "RESA" (styled as such collectively from the following petitioners:

Commerce Energy, Inc.; Consolidated Edison Solutions, Inc.; Direct Energy Services, LLC; Gexa Energy; Hess Corporation; Intergrys Energy Services, Inc.; Liberty Power Corporation; Reliant Energy Retail Services, LLC; Sempra Energy Solutions; Strategic Energy, LLC; Suez Energy Resources NA, Inc.; US Energy Savings Corporation); and UNIVERSITY OF ILLINOIS, Respondents.

| | |
|---|---|
| District & No. | Second District<br>Docket No. 2-12-0334 |
| Filed | September 27, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The Illinois Commerce Commission's order requiring petitioner to refund the increased rates approved by the Commission pursuant to an erroneous methodology that overstated the value of one of petitioner's plants in service was upheld, since the order was within the Commission's jurisdiction, permitting petitioner an opportunity to introduce new evidence on the actual costs incurred during the refund period would amount to improper retroactive ratemaking, and the exclusion of certain plant additions from the rate base was supported by substantial evidence. |
| Decision Under Review | Petition for review of order of Illinois Commerce Commission, No. 07-0566. |
| Judgment | Affirmed. |
| Counsel on Appeal | E. Glenn Rippie, of Rooney Rippie & Ratnaswamy LLP, and Barry Levenstam, of Jenner & Block LLP, both of Chicago, and David W. DeBruin and Matthew E. Price, both of Jenner & Block LLP, of Washington, D.C., for petitioner.<br><br>James E. Weging, of Illinois Commerce Commission, of Chicago, for respondent Illinois Commerce Commission. |

Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Paul Berks, Assistant Attorney General, of counsel), for respondent People *ex rel.* Madigan.

Julie L. Soderna, of Citizens Utility Board, of Chicago, for respondent Citizens Utility Board.

Panel           PRESIDING JUSTICE BURKE delivered the judgment of the court, with opinion.

Justices Hutchinson and Spence concurred in the judgment and opinion.

## OPINION

¶ 1        Commonwealth Edison Company (ComEd) is a public utility company that distributes electricity to consumers in northern Illinois. ComEd petitioned the Illinois Commerce Commission (Commission) to restructure and alter the rates ComEd charges, seeking a $360 million increase (2007 Rate Case). ComEd calculated its revenue requirement using 2006 as an historical "test year" and included certain new distribution assets, referred to as "plant." The Commission entered an order granting an increase of about $274 million (2007 Rate Order), and ComEd collected those rates from customers between September 2008 and May 2011.

¶ 2        ComEd appealed the order, and we held that the Commission, in approving the rates, had employed an erroneous methodology that overstated the value of ComEd's plant in service. *Commonwealth Edison Co. v. Illinois Commerce Comm'n*, 405 Ill. App. 3d 389, 392 (2010) (*ComEd*). We remanded the cause to the Commission to make a finding on the propriety of including third-quarter 2008 plant additions in the *pro forma* adjustments. On remand, the Commission determined that the 2007 Rate Order implicitly denied inclusion of the plant additions. In a "Refund Order," the Commission ordered ComEd to refund to customers nearly $37 million that ComEd collected between September 30, 2010, when this court issued its ruling in *ComEd*, and May 30, 2011, when new rates took effect (the refund period).

¶ 3        ComEd appeals the Commission's Refund Order. First, ComEd argues that the Commission exceeded its jurisdiction in ordering the refund. Second, ComEd argues that a refund is unnecessary because ComEd's actual costs during the refund period were greater than projected, and therefore the error in the 2007 Rate Order did not actually result in an overstatement of the value of ComEd's plant in service. Third, ComEd asserts that, even if a refund were appropriate, the Commission did not review and weigh the previously presented evidence on the third-quarter 2008 plant additions and therefore failed to comply with this court's mandate in calculating the amount to be refunded.

¶ 4        We hold that (1) the Commission had jurisdiction to order the refund; (2) allowing ComEd to introduce new evidence on actual costs during the refund period would have been improper retroactive ratemaking in that it would have required reopening the proceedings to all parties for evidence on actual costs and savings on the entire 2007 Rate Order, and therefore, the Commission properly determined that the refund should be the difference between the actual rates collected pursuant to the 2007 Rate Order and the rates that would have been charged if they had been set in accordance with our views expressed in *ComEd*; and (3) the Commission sufficiently followed our mandate on remand, and substantial evidence supports the Commission's exclusion of the third-quarter 2008 plant additions from the rate base. We affirm the Refund Order.

¶ 5                               I. JURISDICTION

¶ 6        The Commission entered the Refund Order, which is a final order, on February 23, 2012. On March 2, 2012, ComEd filed a timely application for rehearing concerning the issues raised in this appeal. On March 22, 2012, the Commission denied ComEd's application for rehearing. Four days later, ComEd filed a petition for review in this court.

¶ 7        This court has jurisdiction to consider the appeal pursuant to Illinois Supreme Court Rule 335 (eff. Feb. 1, 1994) and section 10-201(a) of the Public Utilities Act (Act) (220 ILCS 5/10-201(a) (West 2010) (appeal allowed within 35 days of denial of rehearing to the appellate court of any district where the subject matter is situated)).

¶ 8                               II. BACKGROUND

¶ 9        ComEd delivers electricity to more than 3.7 million retail consumers in northern Illinois. In response to the enactment of the Electric Service Customer Choice and Rate Relief Law of 1997 (Rate Relief Law) (220 ILCS 5/16-101 *et seq.* (West 2006)), ComEd divested itself of its electricity generating assets (see 220 ILCS 5/16-111(g) (West 2006)) and became an "integrated distribution company," also known as a "wires company." ComEd's costs as a "wires company" do not vary appreciably over time, as they did when costs were driven by generating electricity. *ComEd*, 405 Ill. App. 3d at 393-94.

¶ 10        The rates for delivering electricity are calculated separately from the rates for the electric supply itself. 220 ILCS 5/16-109A, 16-111.5 (West 2006). An electric utility like ComEd is entitled to rates that allow it to recover fully its prudent and reasonable costs of service. 220 ILCS 5/16-108(c) (West 2006) (rates "shall allow the electric utility to recover the costs of providing delivery services through its charges").

¶ 11        A rate case is initiated when a utility files tariffs providing for a rate increase and the Commission suspends those tariffs to conduct an investigation and hearing. 220 ILCS 5/9-201 (West 2006). The Commission may approve, reject, or modify the proposed tariffs. Section 9-201(c) of the Act provides that, if the Commission initiates a proceeding concerning the appropriateness of a utility's proposed rates, the utility has the burden of proving that the proposed rates are just and reasonable. 220 ILCS 5/9-201(c) (West 2006).

¶ 12        In establishing the rates that a public utility is to charge its customers, the Commission

-4-

considers the utility's operating costs, rate base, and allowed rate of return. *ComEd*, 405 Ill. App. 3d at 394 (citing *Citizens Utilities Co. v. Illinois Commerce Comm'n*, 124 Ill. 2d 195, 200 (1988)). Recovery of the utility's operating costs and the return on its rate base is known as the utility's annual revenue requirement. Generally speaking, a utility determines its revenue requirement by adding operating costs to invested capital multiplied by the rate of return. *ComEd*, 405 Ill. App. 3d at 394 (citing *Business & Professional People for the Public Interest v. Illinois Commerce Comm'n*, 146 Ill. 2d 175, 195 (1991) (*BPI II*)). " 'The components of the revenue requirement have frequently been expressed in the formula "R (revenue requirement) = C (operating costs) + Ir (invested capital or rate base times rate of return on capital)." ' " *ComEd*, 405 Ill. App. 3d at 394 (quoting *BPI II*, 146 Ill. 2d at 195-96, quoting *Citizens Utilities Co.*, 124 Ill. 2d at 200-01).[1]

¶ 13 The utility's return, or profit, is the product of the utility's allowed rate of return and its rate base. Both factors are determined by the Commission. Section 9-211 of the Act provides that a utility's rate base may include " 'only the value of such investment which is both prudently incurred and used and useful in providing service to public utility customers.' " *ComEd*, 405 Ill. App. 3d at 394-95 (quoting 220 ILCS 5/9-211 (West 2006)).

¶ 14 The Illinois Administrative Code (Administrative Code) provides that a utility's revenue requirement may be calculated by beginning with costs incurred during a 12-month period known as a "test year," which may be either an historical or a future period. 83 Ill. Adm. Code 287.20 (2003). If an historical test year is used, it can be any consecutive 12-month period, beginning no more than 24 months before the utility's filing new tariffs, for which actual data are available at the time of filing. 83 Ill. Adm. Code 287.20 (2003). "The supreme court has explained that the purpose of the test year rules is 'to prevent a utility from overstating its revenue requirement by mismatching low revenue data from one year with high expense data from a different year.' " *ComEd*, 405 Ill. App. 3d at 395-96 (quoting *BPI II*, 146 Ill. 2d at 238).

¶ 15 The historical data might be subject to "*pro forma*" adjustments, which are estimated or calculated adjustments that reflect certain known and measurable changes in post-test-year data as specified in the rules. 83 Ill. Adm. Code 287.20, 287.40 (2003). The *pro forma* adjustments must reflect changes affecting the ratepayers in plant investment, operating revenues, expenses, and cost of capital where such changes occurred during the selected historical test year or are reasonably certain to occur within 12 months after the filing date of the tariffs and where the amounts of the changes are determinable. 83 Ill. Adm. Code 287.40 (2003); *ComEd*, 405 Ill. App. 3d at 396.

¶ 16 A. 2007 Rate Case

¶ 17 On October 17, 2007, ComEd filed tariffs that incorporated a general increase in rates for delivering electricity and revised other terms and conditions of service. See 220 ILCS 5/9-201 (West 2006). ComEd proposed no change in the price of the electricity itself. ComEd asserted that a $360 million increase in its delivery rates was necessary because the

---

[1]Revenue Requirement = (Operating Costs) + (Rate Base)(Rate of Return)

existing rates were based on costs that were years out of date.

¶ 18    ComEd used the 2006 calendar year as an historical test year and included certain *pro forma* adjustments. ComEd proposed to increase its 2006 rate base investment amount by $1,498,317,000 based on new plant that had been or would be implemented over a 21-month period from January 2007 through September 2008.

¶ 19    On November 28, 2007, the Commission suspended ComEd's proposed tariffs and initiated the 2007 Rate Case. The Commission assigned two administrative law judges (ALJs) to take evidence and issue a proposed order. Several parties, including the Attorney General (AG) and the Citizens Utility Board (CUB), intervened to protect their interests. Testimony and documentary exhibits were submitted, and evidentiary hearings were held from April 28, 2008, to May 5, 2008. *ComEd*, 405 Ill. App. 3d at 396.

¶ 20    ComEd asserted that its delivery costs included the costs of its investment in new infrastructure placed into service since the last rate case. ComEd sought a *pro forma* adjustment to the rate base to include certain new plant that had entered or would enter service after the 2006 test year but before the end of the third quarter of 2008. ComEd argued that the costs it sought to recover were prudently incurred and reasonable in amount and that the plant it included in the rate base was used and useful and necessary to provide delivery services. *ComEd*, 405 Ill. App. 3d at 396.

¶ 21    ComEd and the Commission's staff (Staff) submitted a joint recommendation to the Commission. First, based on the evidence, the Commission's rules, and relevant decisions in earlier rate cases, ComEd and the Staff recommended excluding from ComEd's rate base accumulated depreciation and certain taxes. ComEd and the Staff opined that the Commission should not reduce the rate base further by subtracting extra depreciation and deferred taxes, as the intervenors might propose. Second, ComEd and the Staff recommended that, if the Commission approved the joint recommendation as a whole, the rate base should include plant placed in service through only the second quarter of 2008. ComEd's "conditional withdrawal" of its request to include plant additions from the third quarter of 2008 reduced its requested rate base by about $175 million. *ComEd*, 405 Ill. App. 3d at 397.

¶ 22    On September 10, 2008, the Commission issued the 2007 Order, which authorized ComEd to file new tariffs to implement a $273,573,000 rate increase. The new rates were designed to recover an annual revenue requirement of $1,961,065,000, based in part on the Commission's determination that the value of ComEd's rate base investment was $6,694,039,000. The Commission concluded that the value of ComEd's test-year rate base investment should be increased by the amount of its planned post-test-year plant additions, without recognizing identified post-test-year decreases in existing investment value. Consistent with the recommendation of ComEd and the Staff, the Commission also excluded from the rate base the value of the plant placed in service in the third quarter of 2008. *ComEd*, 405 Ill. App. 3d at 397.

¶ 23                                    B. *ComEd*

¶ 24    ComEd appealed the 2007 Rate Order, arguing that the Commission did not grant ComEd full recovery of prudent and reasonable costs of certain employees' salaries and

-6-

wages. ComEd further asserted that, if we ruled against it on issues raised by the intervenors, it would be denied the benefit of the bargain that it struck with the Staff. Specifically, ComEd argued that it would be manifestly unfair to modify the agreement without allowing ComEd to add to its rate base the plant placed in service in the third quarter of 2008.

¶ 25        The AG, the CUB, and the Illinois Industrial Energy Consumers (IIEC), including Abbott Laboratories, Inc., and other large electricity consumers, were among certain intervenors that also appealed the 2007 Rate Order. The AG, CUB, and IIEC argued that the Commission erred in allowing for post-test-year plant additions in the rate base without also recognizing a setoff for post-test-year changes in accumulated depreciation in the existing plant. IIEC argued that the 2007 Rate Order unlawfully inflated ComEd's rate base, violated test-year requirements as set forth in case law and the Commission's own rules, and misapprehended the Commission's duty to decide a case exclusively on the record before it, regardless of how the Commission decided the same issue in the past.

¶ 26        We ruled in favor of the intervenors on this issue, holding that the Commission abused its discretion in excluding from the rate base the increase in accumulated depreciation of existing plant during the post-test-year period. *ComEd*, 405 Ill. App. 3d at 420. We concluded that ComEd's reading of the test-year rules to exclude accumulated depreciation for the *pro forma* period would create an incentive for the utility to always seek upward *pro forma* adjustments, regardless of any decline in actual net plant, so the utility could recover an amount that ignores accompanying depreciation accumulating over the same period. Such an interpretation would result in a consistently and unavoidably inflated rate base and an inescapably inaccurate picture of the utility's finances. We deemed ComEd's interpretation to be plainly inconsistent with the Commission's treatment of plant investment where the utility adopts a future test year and also plainly inconsistent with basic matching principles. *ComEd*, 405 Ill. App. 3d at 407.

¶ 27        We directed the Commission to revisit the accumulated depreciation issue, including allowing ComEd to request recovery of the aggregate cost of the third-quarter 2008 plant additions. *ComEd*, 405 Ill. App. 3d at 420. We stated that "[w]hile we agree that the Commission abused its discretion in failing to account for the accumulated depreciation of the existing plant during the post-test-year period, we conclude that unilaterally altering the ComEd/Staff stipulation would be manifestly unfair to ComEd." *ComEd*, 405 Ill. App. 3d at 408. We emphasized that we were expressing no opinion as to whether the Commission should include in the rate base those costs, and we noted that ComEd bore the burden of proof on remand. *ComEd*, 405 Ill. App. 3d at 420. We remanded the cause to the Commission for "further proceedings consistent with this opinion." *ComEd*, 405 Ill. App. 3d at 420.

¶ 28                        C. Commission Proceedings on Remand

¶ 29        The 2007 Rate Order remained in effect until the Commission could set new rates on remand, based on our holding in *ComEd*. See *Independent Voters of Illinois v. Illinois Commerce Comm'n*, 117 Ill. 2d 90, 103 (1987) ("During the interval between reversal and the time a new rate schedule is approved by the Commission and takes effect, [the utility]

may continue to charge the challenged rates, subject to refunds for the portions that were held improper by this court [citation], or it would appear that the Commission may immediately set temporary rates ***.").

¶ 30    While the appeal in *ComEd* was pending, ComEd filed new tariffs basing delivery service rates on an adjusted 2009 test year. As with the 2007 tariffs, the Commission suspended these tariffs and opened ICC Docket No. 10-0467 (2010 Rate Case). On May 24, 2011, the Commission entered its final order in that case, approving an increase in ComEd's rates (2010 Rate Order). The new rates went into effect on May 30, 2011. Thus, ComEd collected rates under the illegal 2007 Rate Order from September 30, 2010, when we issued *ComEd*, through May 30, 2011, when the 2010 Rate Order took effect.

¶ 31    On June 22, 2011, the Commission began the proceedings on remand. The parties raised two issues: (1) whether ComEd was required to issue a refund of the nearly $37 million it had collected during the refund period and (2) if a refund was warranted, whether the refund amount should account for ComEd's proposed third-quarter 2008 plant additions. The Commission interpreted *ComEd* as directing it to order a refund upon remand. The Commission concluded that "through the mechanism of remand, the appellate court has tasked the Commission with giving effect to its words. Once the appellate court found the rate approved by the Commission [in the 2007 Rate Order] to be illegal, recalculation of the rate base, and associated rates, was compelled because from that point on ComEd was found to be recovering costs using unlawful, invalid rates."

¶ 32    On February 23, 2012, the Commission entered its Refund Order. ComEd claimed that the rate base during the refund period was greater than the rate base used by the Commission in the 2007 Rate Order, and therefore a refund would not be equitable. The Commission rejected that argument and declined to consider the actual value of ComEd's plant in service during the refund period. The Commission stated that "[i]ncreased costs for ComEd have no part in the decision of whether to grant a refund because the focus should be on ratepayers" who "lost the use of their money while paying the illegal rates."

¶ 33    Citing *Independent Voters*, the Commission determined that the refund amount should be the difference between the actual rates collected pursuant to the 2007 Rate Order and the rates that would have been charged if they had been set in accordance with our views expressed in *ComEd*. The Commission set the refund period from September 30, 2010, the date we issued *ComEd*, to May 31, 2011, when the new rates specified in the 2010 Rate Order took effect. The Commission recalculated ComEd's rate base to account for the accumulated depreciation of existing plant in service through the second quarter of 2008. The Commission ordered ComEd to refund to customers $36,701,000.

¶ 34    In calculating the amount to be refunded, the Commission determined that the 2007 Rate Order had implicitly found that ComEd's request to include the third-quarter 2008 plant additions lacked evidentiary support. The Commission drew the inference from the portion of the 2007 Rate Order that contained a "detailed factual analysis why the first and second quarter 2008 plant additions met the *** requirements for *pro forma* additions to rate base" but said nothing about the third-quarter 2008 plant additions. The Commission further stated that "because ComEd had reached an agreement with Staff to limit the *pro forma* additions

-8-

to the first two quarters of 2008, in surrebuttal testimony it did not address Staff witness [Tom] Griffin's continued opposition in rebuttal testimony to the inclusion of the third-quarter [2008] plant." The Commission "clarified that the original order in this proceeding should have included a specific finding that it did not find support for the third-quarter [2008] plant additions in the record." ComEd timely appeals.

¶ 35                                    III. ANALYSIS

¶ 36    On appeal, ComEd argues that we must reverse the Commission's Refund Order. We give substantial deference to the decisions of the Commission, in light of its expertise and experience in this area. *ComEd*, 405 Ill. App. 3d at 397. Accordingly, on appeal, the Commission's findings of fact are considered *prima facie* true; its orders are considered *prima facie* reasonable; and the appellant bears the burden of proof on all issues raised. *ComEd*, 405 Ill. App. 3d at 397.

¶ 37    We are not bound by the Commission's determinations on questions of law, but we will give substantial weight and deference to the Commission's interpretation of an ambiguous statute that it is charged with administering and enforcing. *ComEd*, 405 Ill. App. 3d at 397. Our review is limited to the following matters: (1) whether the Commission acted within its authority; (2) whether it made adequate findings to support its decision; (3) whether the decision was supported by substantial evidence; and (4) whether state or federal constitutional rights were infringed. *ComEd*, 405 Ill. App. 3d at 397-98.

¶ 38    The Commission is not required to provide findings on each evidentiary claim; its findings are sufficient if they are specific enough to enable the court to make an informed and intelligent review of its order. 220 ILCS 5/10-201(e)(iii) (West 2006); *ComEd*, 405 Ill. App. 3d at 398. In other words, the Commission must state the facts essential to its ruling so that the court can properly review the basis for the decision. *ComEd*, 405 Ill. App. 3d at 398. "Substantial evidence" means more than a mere scintilla, but it does not have to rise to the level of a preponderance of the evidence. *ComEd*, 405 Ill. App. 3d at 398. Substantial evidence is evidence that a "reasoning mind would accept as sufficient to support a particular conclusion." (Internal quotation marks omitted.) *ComEd*, 405 Ill. App. 3d at 398. Deference to the Commission is especially appropriate in the area of fixing rates. *ComEd*, 405 Ill. App. 3d at 398. On review, this court can neither reevaluate the credibility or weight of the evidence nor substitute its judgment for that of the Commission. *ComEd*, 405 Ill. App. 3d at 398.

¶ 39    First, ComEd argues that the Commission exceeded its jurisdiction in ordering the refund. Second, ComEd argues that a refund is unnecessary because its actual costs during the refund period were greater than projected, and therefore the error in the 2007 Rate Order did not actually result in an overstatement of the value of ComEd's plant in service. Third, ComEd asserts that, even if a refund were appropriate, the Commission did not review and weigh the previously presented evidence on the third-quarter 2008 plant additions and therefore failed to comply with this court's mandate in calculating the amount to be refunded. For the following reasons, we reject each of ComEd's claims, and we affirm the Refund Order.

¶ 40                              A. Commission's Authority to Order Refund

¶ 41        First, ComEd argues that the Commission lacked authority to enter the Refund Order. The scope of the Commission's jurisdiction is a question of law, which we review *de novo*. *City of Chicago v. Illinois Commerce Comm'n*, 294 Ill. App. 3d 129, 134-35 (1997).

¶ 42        In *Independent Voters*, our supreme court established that the Commission has the authority to order a refund under facts similar to those in this case. The *Independent Voters* line of cases began in 1971 when the Commission granted a rate increase to Illinois Bell Telephone Company. The first appeal resulted in the rate order being partially reversed, based on the Commission's error in including in the utility's revenue requirement certain lobbying, advertising, and licensing expenses. *Illinois Bell Telephone Co. v. Illinois Commerce Comm'n*, 55 Ill. 2d 461, 480-84 (1973). While that appeal was pending, the utility initiated a second proceeding before the Commission, seeking another general rate increase. The Commission, following the guidelines of permissible expenses set forth in the original appeal, approved the second request for a rate increase. The first rate order was in effect during the litigation, including the appeal regarding it, and that rate order remained in effect until the second rate order became effective. *Independent Voters*, 117 Ill. 2d at 93.

¶ 43        On remand, the Commission reopened proceedings on the first rate order, at which time the Independent Voters of Illinois (IVI) asked the Commission to award the utility's customers a refund of the improper amounts paid under the rate order. *Independent Voters*, 117 Ill. 2d at 93-94. The IVI sought restitution for two periods: (1) from the time that the first rate order took effect through the supreme court's reversal of the order and (2) from the time of the supreme court's reversal to the time the second rate order took effect. The Commission rejected the IVI's argument for restitution, as did the circuit and appellate courts. *Independent Voters*, 117 Ill. 2d at 94.

¶ 44        When the matter reached the supreme court, it explained that restitution is an equitable remedy, the basis of which is unjust enrichment to the defendant. "Restitution is compelled against one who has obtained money or property without authority and usually where an adequate legal remedy does not exist for the aggrieved party." *Independent Voters*, 117 Ill. 2d at 98. The supreme court held that the Commission properly denied restitution for the period from the effective date of the challenged rate order through the reversal of that order. The court cited certain sections of the Act, which have remained substantively unchanged since *Independent Voters* was decided:

>        "[A] Commission-approved rate order cannot be deemed excessive for reparations purposes if the Commission found it reasonable and just, although it is later set aside by a reviewing court, because section 71 [(Ill. Rev. Stat. 1971, ch. 111⅔, ¶ 75) (now 220 ILCS 5/10-204 (West 2010))] provides that the order shall remain in effect during the pendency of an appeal, unless it is stayed or suspended. [The utility] was prohibited from charging more or less than the rates set by the Commission (Ill. Rev. Stat. 1971, ch. 111 2/3, par. 37) [(now 220 ILCS 5/9-240 (West 2010))] and was statutorily required to follow the 1971 rates set by the Commission. Since [the utility] was required by statute to collect the new rates, which were found just and reasonable by the Commission, [the

utility] has received no unlawful charges of which it should be 'disgorged' under restitutional principles." *Independent Voters*, 117 Ill. 2d at 98-99.

¶ 45 The supreme court treated the second proposed refund period differently, holding that the Commission erred in denying restitution for the period from the reversal of the first rate order to the effective date of the second rate order. The supreme court observed that the challenged rate order was invalid from the time the court entered its judgment that held certain portions to be invalid. *Independent Voters*, 117 Ill. 2d at 102. Thus, the supreme court held, the Commission should have granted the utility's customers a refund for overpayment from when the supreme court entered its judgment until new rates were set:

> "The portion of the rates that was held to be erroneously set by the Commission should be refunded to customers who paid them from the time of this court's previous decision until the new rates took effect ***. To hold otherwise would allow [the utility] to continue collecting the unlawfully increased rate and benefitting from such, without a remedy to the customer, until the Commission conducts hearings and determines a new rate base. The Commission conducted hearings here in the same month that the court announced its decision, and a new rate went into effect within the month that this court issued its mandate. The rate-making process, however, may be lengthy, and a utility could be tempted to extend that process if it continued to benefit from the increased rate without the risk that it would have to refund customers overcharges after a judicial reversal. During the interval between reversal and the time a new rate schedule is approved by the Commission and takes effect, [the utility] may continue to charge the challenged rates, subject to refunds for the portions that were held improper by this court [citation], or it would appear that the Commission may immediately set temporary rates ***." *Independent Voters*, 117 Ill. 2d at 102-03.

¶ 46 The supreme court rejected the argument that the comprehensive legislative scheme that controls utility rates justified keeping a rate order in effect after reversal. *Independent Voters*, 117 Ill. 2d at 103. The court noted that, without a stay or suspension, the Act specifically authorizes a utility to collect the rates during the pendency of an appeal, but "once that rate order is set aside on appeal, the utility should not continue to benefit from what has been determined to be unlawful portions of a rate increase." *Independent Voters*, 117 Ill. 2d at 104.

¶ 47 Mindful that the unavailability of a refund would force consumers to pay an excessive rate, thereby raising due process concerns, the supreme court ruled that a reviewing court's equitable powers may be invoked to authorize such a refund. Although the Act does not specifically provide a remedy for this situation, it provides for a court to review the lawfulness and reasonableness of Commission proceedings. *Independent Voters*, 117 Ill. 2d at 104 (citing Ill. Rev. Stat. 1971, ch. 111⅔, ¶ 68 (now 220 ILCS 5/10-201(a) (West 2010))). Because an appropriate remedy was not provided in the Act, the court was authorized to exercise its equitable powers to order the refund. *Independent Voters*, 117 Ill. 2d at 104 (citing *Peoples Gas Light & Coke Co. v. Slattery*, 373 Ill. 31, 42 (1939), *appeal dismissed sub nom. Peoples Gas Light & Coke Co. v. Hart*, 309 U.S. 634 (1940)).

¶ 48 The supreme court rejected the notion that the rule against retroactive ratemaking prevents a refund after a rate order is reversed by a reviewing court. *Independent Voters*, 117

Ill. 2d at 104. The court reasoned that the Act authorizes judicial review of Commission proceedings, allowing a determination of "the lawfulness and reasonableness of a rule, regulation, order or decision and may vacate, modify or otherwise hold an order invalid." *Independent Voters*, 117 Ill. 2d at 105 (citing Ill. Rev. Stat. 1971, ch. 111⅔, ¶¶ 68, 71 (now 220 ILCS 5/10-201, 10-204 (West 2010))). The refund was not precluded by the rule against retroactive ratemaking because the refund was a result of a direct, statutorily authorized review of the Commission's order, and the case previously was remanded to the Commission to correct the erroneous portion of the rates and not for original ratemaking. *Independent Voters*, 117 Ill. 2d at 105. The court held that "[t]he function of the courts in reviewing Commission proceedings would be meaningless if no remedy could be provided after the court holds that a Commission-approved rate order included allowance of improper expenses and deductions for the utility." *Independent Voters*, 117 Ill. 2d at 105.

¶ 49　　In summary, the supreme court held that, when a reviewing court reverses a rate order, the Act prohibits a retrospective refund dating back to the rate order's effective date (*Independent Voters*, 117 Ill. 2d at 98-99); but the reviewing court's equitable powers authorize a prospective refund from the date of reversal to the effective date of a new rate schedule. *Independent Voters*, 117 Ill. 2d at 102-03. *Independent Voters* establishes the Commission's authority to enter the Refund Order, directing ComEd to issue a refund for the refund period. If we were to hold that the 2007 Rate Order remained in effect, despite its reversal, until the effective date of the 2010 Rate Order, we would allow ComEd to have collected and benefitted from the unlawfully increased rate from September 30, 2010, when this court issued its ruling in *ComEd*, to May 30, 2011, when new rates took effect. *Independent Voters* prohibits such a result.

¶ 50　　ComEd argues that the Refund Order must be reversed because the power to order a refund "flows from a *court's* inherent equitable authority" rather than the Commission's authority under the Act. (Emphasis in original.) ComEd insists that the Commission lacked authority because we did not specifically address in *ComEd* the possibility of a refund. In *ComEd*, we held that the Commission, in approving ComEd's rates, had employed an erroneous methodology that overstated the value of ComEd's plant in service. We remanded the cause for the Commission to recalculate the rate base, taking into account the accumulated depreciation of the existing plant and ComEd's request to include the third-quarter 2008 plant additions. We also directed the Commission to conduct further proceedings consistent with our opinion. In directing the Commission to conduct additional proceedings as needed, we exercised our inherent equitable power to authorize the Commission to remedy ComEd's unjust enrichment in collecting the illegal rates. The Commission was acting with our authorization when it heard the petition for a refund of the overpayment.

¶ 51　　In fact, *Independent Voters* stands for the proposition that, when a reviewing court reverses a rate order and remands the cause to the Commission to recalculate the rates, the Commission commits *reversible error* if it denies a petition for a refund of excessive rates collected from the date of reversal of the rate order to when new rates take effect. In that case, the decision that partially reversed the challenged rate order (*Illinois Bell Telephone*) did not mention the possibility of a refund; but IVI petitioned for one on remand, and the

-12-

Commission denied it. By reversing the Commission's denial of a refund where one was owed, *Independent Voters* established that the Commission is not only authorized but *required* to grant a petition for a refund of the portion of Commission-approved rates that a reviewing court previously held to be erroneously set. A Commission-ordered refund upon remand accomplishes the reviewing court's goal of restitution as an equitable remedy for the unjust enrichment to the utility.

¶ 52    The Commission correctly recognized its duty under *Independent Voters* to order a refund in this case. The Commission observed that "through the mechanism of remand, the appellate court has tasked the Commission with giving effect to its words. Once the appellate court found the rate approved by the Commission [in the 2007 Rate Order] to be illegal, recalculation of the rate base, and associated rates, was compelled because from that point on ComEd was found to be recovering costs using unlawful, invalid rates." In calculating and ordering the refund on remand, the Commission was fulfilling its role as fact finder in the aid of the equitable power that we invoked in *ComEd*.

¶ 53    We reject ComEd's claim that *People ex rel. Hartigan v. Illinois Commerce Comm'n*, 148 Ill. 2d 348 (1992), compels a departure from *Independent Voters*. ComEd cites *Hartigan* for the proposition that only a reviewing court, and not the Commission, may order a refund. The Commission concluded that *Hartigan* did not bar the refund, due to its "convoluted procedural history," which we summarize.

¶ 54    In *Hartigan*, ComEd petitioned the Commission for a rate increase to pay for a nuclear generating facility. *Hartigan*, 148 Ill. 2d at 359. The Commission granted a $495 million rate increase (Rate Order I), and several intervenors appealed to the circuit court,[2] which reversed Rate Order I and remanded the cause to the Commission. *Hartigan*, 148 Ill. 2d at 360.

¶ 55    Concluding that the Commission had used a flawed methodology in identifying reasonable costs, the circuit court ordered the Commission to (1) "roll back" the rate increase established in Rate Order I, (2) establish temporary revised rates within 30 days, and (3) exclude various costs of the nuclear facility when recalculating the rate base. *Hartigan*, 148 Ill. 2d at 360-61. Upon ComEd's emergency petition, the circuit court stayed enforcement, which effectively allowed ComEd to continue collecting throughout the appellate process the $495 million rate increase that the circuit court had found to be illegal. The Commission conditioned the stay on ComEd creating an escrow account reflecting the difference between the rates with and without the costs of the nuclear facility. If the circuit court's reversal of Rate Order I was ultimately upheld, ComEd would be required to pay its customers a refund with interest. The circuit court expressly retained jurisdiction to enforce the stay order. *Hartigan*, 148 Ill. 2d at 361.

¶ 56    The supreme court affirmed the circuit court's reversal of Rate Order I but reversed, as beyond statutory authority, the parts of the circuit court's holding that ordered the Commission to set certain rates within a limited time and to exclude certain costs from its

[2]At the time of *Hartigan*, the Commission's orders were reviewed first by the circuit court. In 1986, the General Assembly amended the Act, directing that the Commission's rate orders be reviewed directly by the appellate court.

ultimate rate determination. *Hartigan*, 148 Ill. 2d at 362. The supreme court noted that the remedy of a refund was "allowable," leaving open the question of whether the Commission or the circuit court was authorized to dictate the terms of a refund. *Hartigan*, 148 Ill. 2d at 362.

¶ 57 On remand, the Commission issued a second rate order (Rate Order II), which (1) recalculated the rate base and (2) ordered ComEd to refund, with 5% interest, $194.6 million in excess rates collected from the date the circuit court reversed Rate Order I through December 31, 1989, after which new rates took effect. *Hartigan*, 148 Ill. 2d at 362-63.

¶ 58 On appeal, the circuit court, citing its retention of jurisdiction, found that the Commissions's refund terms in Rate Order II were *dicta*. *Hartigan*, 148 Ill. 2d at 363. The circuit court determined that its statutory review jurisdiction ended when it reversed Rate Order I and remanded the cause to the Commission. However, the circuit court insisted that its conditional stay order was authorized by Illinois Supreme Court Rule 305(b) (eff. July 1, 1982), and therefore its refund jurisdiction survived until the stay order's conditions were accomplished. *Hartigan*, 148 Ill. 2d at 364. Accordingly, the circuit court issued a series of orders in which it specified the terms and methodology for calculating the refund. The circuit court's refund terms conflicted with the Commission's refund terms.

¶ 59 The parties appealed to the appellate court, which determined that the Commission, not the circuit court, had jurisdiction. The appellate court determined that section 9-252 of the Act authorized the Commission to order the refund as part of Rate Order II. *Hartigan*, 148 Ill. 2d at 394. Section 9-252 provides in pertinent part, " '[w]hen complaint is made to the Commission concerning any rate or other charge of any public utility and the Commission finds, after a hearing, that the public utility has charged an excessive or unjustly discriminatory amount for its product, commodity or service, the Commission may order that the public utility make due reparation to the complainant therefor, with interest at the legal rate from the date of payment of such excessive or unjustly discriminatory amount.' " *Hartigan*, 148 Ill. 2d at 394 (quoting Ill. Rev. Stat. 1985, ch. 111⅔, ¶ 9-252 (now 220 ILCS 5/9-252 (West 2010))). The appellate court affirmed the Commission's rate determination in Rate Order II, but reversed the refund's inclusion of revenues from a later test year.

¶ 60 The parties appealed to the supreme court, which reaffirmed *Independent Voters* and held that, although a refund was appropriate, section 9-252 did not authorize the Commission to order the refund:

"In the instant case, the [Commission]-approved rates which were established in Rate Order I were set aside on appeal by the circuit court. This court affirmed the circuit court's reversal of Rate Order I. [Citation.] These facts present a situation similar to that of the factual situation that this court encountered in *Independent Voters*. [Citation.] This court's decision in *Independent Voters* controls the instant case. Therefore, the refund of illegal rates collected under the Commission's Rate Order I is an equitable remedy made available to ratepayers pursuant to this court's equitable powers delineated in its decision in *Independent Voters* and is not a statutorily based remedy, as the appellate court

-14-

concluded." *Hartigan*, 148 Ill. 2d at 397-98.[3]

¶ 61     The supreme court determined that the circuit court, not the Commission, had subject matter jurisdiction over the terms and implementation of the refund of the illegal rates collected pursuant to the Commission's Rate Order I. *Hartigan*, 148 Ill. 2d at 393. The supreme court explained that "*[i]f no stay is obtained*, and the rate is reversed on appeal, the utility may continue to collect the challenged rates while the appeal is pending, but must refund that portion of the rate order which the reviewing court holds to be improper." (Emphasis in original.) *Hartigan*, 148 Ill. 2d at 394 (citing *Independent Voters*, 117 Ill. 2d at 103). The supreme court determined that the Act did not authorize the circuit court to order the " 'rollback, or return, to prior rates' " but, pursuant to section 10-204 of the Act, could stay the *operation* of the invalidated rate order. *Hartigan*, 148 Ill. 2d at 401 (citing Ill. Rev. Stat. 1985, ch. 111⅔, ¶ 10-204 (now 220 ILCS 5/10-204 (West 2010))). Furthermore, in granting the stay order pursuant to Rule 305(b), the circuit court was acting in a judicial capacity and exercising inherent equitable powers. *Hartigan*, 148 Ill. 2d at 402. The supreme court determined that, under Rule 305(b), the stay order was conditioned upon "just terms" in that the utility and the intervenors benefitted. *Hartigan*, 148 Ill. 2d at 402 (" 'The stay, whether granted by the trial or reviewing court, shall be conditioned upon such terms as are just.' " (Emphasis omitted.) (quoting Ill. S. Ct. R. 305(b)(3) (eff. July 1, 1982))). First, if the circuit court had refused to stay its suspension of the invalidated rates and a reviewing court had reversed the circuit court and had reinstated Rate Order I, the rule against retroactive ratemaking would have prohibited the utility from recovering any money lost during the appellate process. *Hartigan*, 148 Ill. 2d at 403. Second, if the circuit court had not retained jurisdiction over a potential refund, consumers could have been required to pay improper rates throughout the appellate process, without a remedy. *Hartigan*, 148 Ill. 2d at 404. The supreme court held that "the circuit court lawfully acquired and retained equitable jurisdiction over the terms and implementation of the refund pursuant to [Rule 305(b)]." *Hartigan*, 148 Ill. 2d at 404.

¶ 62     Most importantly, *Hartigan* reaffirmed the principle that the refund of illegal rates collected under a judicially reversed Commission-approved rate order is an equitable remedy made available to ratepayers pursuant to a reviewing court's equitable powers. *Hartigan*, 148 Ill. 2d at 397-98. On the issue of whether the Commission has jurisdiction to order such a refund, *Hartigan* is procedurally distinguishable from *Independent Voters* and this case. The *Hartigan* court was presented with a situation where the Commission and the circuit court entered conflicting refund orders, which required the supreme court to assess the circuit court's attempt to retain jurisdiction by means of its conditional stay order. No such jurisdictional conflict exists here. Like *Independent Voters*, this case involves a

---

[3]On appeal, ComEd correctly points out that, because a refund to ratepayers is authorized by a court's equitable powers and not by the Act, section 9-253, like section 9-252, does not authorize the Refund Order. Section 9-253, which was enacted after *Independent Voters* and *Hartigan*, concerns the refund of overcharges, *i.e.*, charges other than Commission-approved rates. Section 9-253 does not enlarge the Commission's jurisdiction over refunds for judicially reversed Commission-approved rates.

straightforward procedural history: in *ComEd*, we reversed in part the Commission-approved 2007 Rate Order and remanded the cause for the Commission to conduct additional proceedings, including recalculating the rates, which ultimately warranted a refund to remedy ratepayers' overpayment. We hold that our decision in *ComEd* gave the Commission the authority to order the refund. Our holding is consistent with both *Independent Voters* and *Hartigan*.

¶ 63                              B. Calculation of Refund

¶ 64     ComEd next contends that the Refund Order is inequitable because the erroneous portions of the 2007 Rate Order were harmless and did not cause ComEd to be unjustly enriched. ComEd does not challenge the Commission's arithmetic in calculating the refund, only its methodology. ComEd insists that the Commission should have accounted for the utility's actual costs when calculating the refund. ComEd argues that "both the evidence the Commission refused to consider on remand and the Commission's own findings in the 2010 Rate Order demonstrate that the investment value actually dedicated by ComEd to utility services during the refund period was *higher* than the value calculated by the Commission in the 2007 Rate Order." (Emphasis in original.)

¶ 65     In *Independent Voters*, the utility made precisely the same argument: the Commission-approved rates were actually too low to provide the revenue the utility needed, and therefore the utility's continued collection of those illegal rates after reversal produced no unjust enrichment that would warrant a refund to its customers. The supreme court rejected the claim, noting that after reversal the Commission had approved new rates that allowed the utility a rate increase. *Independent Voters*, 117 Ill. 2d at 105. The court emphasized that the utility had been allowed to collect, from the date of the court's previous decision through the effective date of the new rates, the improper portions of the previous rate schedule. The court held that the refund should be the difference between the original rates and the rates that would have been charged if they had been set in accordance with the views expressed in the previous decision for the period between the court's reversal and the effective date of the new rate order. *Independent Voters*, 117 Ill. 2d at 105. In this case, the Commission correctly followed *Independent Voters*, calculating the refund as the difference between the rates under the 2007 Rate Order and the rates that would have been charged if they had been set in accordance with the views we expressed in *ComEd*.

¶ 66     ComEd cites *Hartigan* for the proposition that the Commission should have accounted for ComEd's actual operating costs incurred during the refund period. In *Hartigan*, the Commission-approved Rate Order I was reversed on judicial review (*Hartigan*, 148 Ill. 2d at 360-61), and on remand, the Commission entered Rate Order II, which recalculated the rates and ordered a refund based on the ratepayers' overpayment (*Hartigan*, 148 Ill. 2d at 362-63). The supreme court ultimately ruled that the Commission lacked authority to enter Rate Order II, because the circuit court had retained jurisdiction throughout the appellate process. *Hartigan*, 148 Ill. 2d at 401-04.

¶ 67     However, the supreme court affirmed the circuit court's determination that the refund amount should be based on the actual revenue collected by the utility during the refund

period rather than the projected revenue estimated in the Commission's Rate Order I. *Hartigan*, 148 Ill. 2d at 408-09. The supreme court held that "the amount of money to be refunded consists of the difference between the rates collected pursuant to Rate Order I and the rates that should have been collected[,] which were established in Rate Order II." *Hartigan*, 148 Ill. 2d at 409 (citing *Independent Voters*, 117 Ill. 2d at 105).

¶ 68 The supreme court reversed the appellate court's holding that the Commission should offset the refund principal by any increase in the utility's actual operating costs. *Hartigan*, 148 Ill. 2d at 409. The supreme court reasoned that, because the Commission sets rates using the revenue requirement formula, which includes operating costs as a component, the utility's operating costs already should have been taken into account when the circuit court ordered the refund. *Hartigan*, 148 Ill. 2d at 409-10. ComEd interprets this portion of *Hartigan* to mean that the utility's *actual* cost increases should be taken into account when calculating the refund. We disagree. By stating that "the utility's operating costs should already have been taken into account," the *Hartigan* court was expressing that the revenue requirement formula accounts for a utility's projected operating costs, not that actual costs should be determined later and factored into a refund. Allowing ComEd to introduce new evidence on actual costs incurred during the refund period would have been improper retroactive ratemaking, which would have required reopening the proceedings to all parties for evidence on actual costs and savings on the entire 2007 Rate Order. The Commission properly calculated the refund as the difference between the actual revenues collected pursuant to the 2007 Rate Order and the revenues that would have been charged if the rates had been set in accordance with *ComEd*.

¶ 69 We also reject the notion that the Commission's approval of operating costs in the 2010 Rate Order has any bearing on the refund calculation accompanying the 2007 Rate Case. ComEd likens Rate Order II in *Hartigan* to the 2010 Rate Order in this case, but the orders are not analogous. Rate Order II is more like the Refund Order here in that each ordered a refund after recalculating rates following judicial review. The 2007 Rate Case, which is at issue here, and the 2010 Rate Case involve different rate petitions corresponding to different test years. Calculating the refund for the 2007 Rate Case by factoring in ComEd's costs that were approved in the 2010 Rate Order would thwart the purpose of the test year rules, which is " 'to prevent a utility from overstating its revenue requirement by mismatching low revenue data from one year with high expense data from a different year.' " *ComEd*, 405 Ill. App. 3d at 395-96 (quoting *BPI II*, 146 Ill. 2d at 238).

¶ 70 C. Third-Quarter 2008 Plant Additions

¶ 71 Finally, ComEd argues that, even if a refund were appropriate, the Commission should have entered new findings regarding the third-quarter 2008 plant additions, and therefore it failed to comply with this court's mandate and make sufficient findings when calculating the amount to be refunded. Specifically, ComEd asserts that the Commission's decision must be reversed on the grounds of estoppel, lack of detail, and lack of substantial evidence supporting the decision. ComEd asserts that a reassessment of those plant additions would have compelled the Commission to factor them into the rate base, and then the refund. We

disagree.

¶ 72    In *ComEd*, the intervenors prevailed on the issue of test year rate base accumulated depreciation, which caused ComEd to renew on remand its request to include in the rate base the third-quarter 2008 *pro forma* capital adjustments. The "*pro forma*" adjustments are estimated or calculated adjustments that reflect certain known and measurable changes in post-test-year data, as specified in the rules. 83 Ill. Adm. Code 287.20, 287.40 (2003). The *pro forma* adjustments must reflect changes affecting the ratepayers in plant investment, operating revenues, expenses, and cost of capital where such changes occurred during the selected historical test year or are reasonably certain to occur within 12 months after the filing date of the tariffs and where the amounts of the changes are determinable. 83 Ill. Adm. Code 287.40 (2003); *ComEd*, 405 Ill. App. 3d at 396.

¶ 73    In *ComEd*, the parties, depending on their viewpoints, asked us to order the Commission to include or exclude the third-quarter 2008 plant additions. In contrast, the Commission argued that we should not automatically order that those plant additions be included in the rate base. Instead, the Commission was amenable to conducting further proceedings. Because the previous exclusion of the third-quarter 2008 plant additions had been negotiated as part of the ComEd/Staff stipulation, we left the determination to the Commission:

> "The Commission did not enter findings of fact regarding the third-quarter 2008 additions, and the Commission is the fact-finding body. *BPI II*, 146 Ill. 2d at 196 ('In the ratemaking scheme, the Commission and not the court is the fact-finding body'). Apart from examining whether the Commission acted outside the scope of its authority or infringed upon a constitutional right, a court is limited to reviewing whether the Commission set out adequate findings of fact supporting its decision and whether the findings are against the manifest weight of the evidence. *BPI II*, 146 Ill. 2d at 196. Considering that the Commission has not had the opportunity to make findings of fact regarding the third-quarter 2008 plant additions, we decline to direct the Commission to take any action on remand other than allowing ComEd to petition for their inclusion in the rate base." *ComEd*, 405 Ill. App. 3d at 408-09.

¶ 74    On remand, the Commission determined that, in its 2007 Rate Order, the Commission already had implicitly found that the third-quarter 2008 plant additions should be excluded from the rate base for lack of evidentiary support. The Commission drew the inference from a portion of the 2007 Rate Order that contained a "detailed factual analysis why the first and second quarter 2008 plant additions met the *** requirements for *pro forma* additions to rate base" but said nothing about the third-quarter 2008 plant additions. The Commission pointed out that "because ComEd had reached an agreement with Staff to limit the *pro forma* additions to the first two quarters of 2008, in surrebuttal testimony [ComEd] did not address Staff witness Griffin's continued opposition in rebuttal testimony to the inclusion of the third-quarter [2008] plant." The Commission emphasized that the 2007 Rate Order was based on the evidence in the record, not on the ComEd/Staff stipulation. The Commission "clarifie[d] that the original order in this proceeding should have included a specific finding that it did not find support for the third-quarter [2008] plant additions in the record."

¶ 75    ComEd asserts that the Commission should be judicially estopped from deviating from

-18-

its argument in the previous appeal that further proceedings on the third-quarter 2008 plant additions were appropriate. The doctrine of judicial estoppel promotes the truth and protects the integrity of the court system by preventing litigants from deliberately shifting positions to suit the exigencies of the moment. *United Automobile Insurance Co. v. Buckley*, 2011 IL App (1st) 103666, ¶ 35. Judicial estoppel is flexible but five elements generally are necessary: (1) the two positions must be taken by the same party; (2) the positions must be taken in judicial proceedings; (3) the positions must be given under oath; (4) the party must have successfully maintained the first position and received some benefit; and (5) the two positions must be totally inconsistent. *United Automobile Insurance Co.*, 2011 IL App (1st) 103666, ¶ 35. Judicial estoppel applies to statements of fact and not to legal opinions or conclusions. *United Automobile Insurance Co.*, 2011 IL App (1st) 103666, ¶ 35. In this case, the Commission has taken only one position regarding proceedings on the third-quarter 2008 plant additions: the Commission, not the appellate court, should decide in the first instance whether those plant additions should be included in the rate base. More importantly, the Commission has not taken inconsistent positions on the answer to that question. In the prior appeal, the Commission opposed our "automatically" granting ComEd's petition and advocated remanding the cause to the Commission instead. On remand, the Commission cited Griffin's testimony in support of excluding the third-quarter 2008 plant additions as not being known and measurable within the record of the case. Finding that it had already adopted the Staff's evidence, the Commission excluded from the rate base the third-quarter 2008 plant additions. Advocating a remand and then denying the challenged *pro forma* adjustments are not inconsistent positions taken by the Commission.

¶ 76     We further reject ComEd's general assertion that the Refund Order, and in turn the 2007 Rate Order, lack sufficient detail regarding the third-quarter 2008 plant additions. If a reviewing court determines that the Commission's rule, regulation, order, or decision does not contain findings or analysis sufficient to allow an informed judicial review thereof, the court shall remand the rule, regulation, order, or decision, in whole or in part, with instructions to the Commission to make the necessary findings or analysis. 220 ILCS 5/10-201(e)(iii) (West 2010). However, the Commission need not recite all the evidence on which its findings are based. *Chicago Junction Ry. Co. v. Illinois Commerce Comm'n*, 412 Ill. 579, 584 (1952).

¶ 77     In the Refund Order, the Commission accurately characterized the findings in the 2007 Rate Order and the evidence in the record on which they were based. In the 2007 Rate Order, the Commission noted that, historically, it has welcomed consensus recommendations presented by groups of litigants and has entered orders based on such recommendations when they are supported by the evidence. Noting that the ComEd/Staff stipulation on *pro forma* adjustments was not unanimous, the Commission ruled that "the stipulation is irrelevant to the Commission for purposes of our determinations in this matter. Accordingly, the stipulation will be treated as merely another proposed resolution for the various contested issues addressed in this proceeding that must be considered based on the record evidence adduced in this docket."

¶ 78     Throughout the proceedings, the Commission's treatment of the ComEd/Staff stipulation has been consistent with *Business & Professional People for the Public Interest v. Illinois*

*Commerce Comm'n*, 136 Ill. 2d 192, 217-18 (1989) (*BPI I*), where the supreme court held that the Commission and a utility may not enter into a settlement that excludes intervenors unless the resulting order is otherwise lawful:

> "Absent statutory law to the contrary, we have no quarrel with the Commission's ability to *consider* a settlement proposal not agreed to by all of the parties and the intervenors as a decision on the merits, as long as the provisions of such a proposal are within the Commission's power to impose, the provisions do not violate the Act, and the provisions are independently supported by substantial evidence in the whole record. Such was not the situation in the case at bar.

> *** [T]he Commission may not enter into a settlement with a utility which excludes the intervenors in the case, and it may not enter an order not based on the evidence." (Emphasis in original.) *BPI I*, 136 Ill. 2d at 217-18.

¶ 79 Consistent with *BPI I*, the Commission stated in the 2007 Rate Order that it had evaluated the whole record to determine whether the proposed *pro forma* capital additions, including the third-quarter 2008 plant, satisfied sections 287.20 and 287.40 of title 83 of the Administrative Code (see 83 Ill. Adm. Code 287.20, 287.40 (2003)) and complied with the test year rules. The Commission reiterated that "of key importance is that neither [Staff] nor [ComEd] are requesting that the Commission enter an order approving the agreement or stipulation that they have reached regarding resolution of various issues in this matter. Instead the Commission, as we are lawfully mandated to do, will conduct a [*BPI I*] analysis and base our determination and ultimate conclusions on the applicable law and merits of the record evidence."

¶ 80 The 2007 Rate Order contains a finding that, because the *pro forma* additions for the first two quarters of 2008 satisfy sections 287.20 and 287.40 and the test-year rules, the evidence coupled with the relevant legal standards supports including those *pro forma* additions in the rate base. The 2007 Rate Order was silent on whether the record contains substantial evidence to support including the third-quarter 2008 plant additions. However, in opposition to ComEd, the Staff introduced evidence on this issue, and the Commission recited the evidence in detail in both the 2007 Rate Order and the Refund Order on remand.

¶ 81 On appeal, the Commission argues that "[t]here can be no doubt that the Commission has found that the evidence did not support the grant of the third-quarter *pro forma* capital adjustments in this docket." The record indicates that the Commission indeed decided to exclude the third-quarter 2008 *pro forma* capital adjustments in this docket. Besides claiming unpersuasively that the Commission violated our mandate on remand, ComEd does not identify any error based on the timing of the Commission's decision. Whether the Commission made its express findings in the Refund Order on remand or in the original 2007 Rate Order is not germane to whether the decision is supported by substantial evidence.

¶ 82 We conclude that there is substantial evidence to support the Commission's conclusion in the Refund Order that the third-quarter 2008 *pro forma* capital adjustments were not known and measurable for the 2006 test year. A reviewing court shall reverse a Commission rule, regulation, order, or decision, in whole or in part, if it finds that: (a) the Commission's findings are not supported by substantial evidence based on the entire record of evidence

presented to or before the Commission for and against such rule, regulation, order, or decision; (b) the rule, regulation, order, or decision is without the jurisdiction of the Commission; (c) the rule, regulation, order, or decision violates the state or federal constitution or laws; or (d) the proceedings or manner by which the Commission considered and decided its rule, regulation, order, or decision violated the state or federal constitution or laws, to the prejudice of the appellant. 220 ILCS 5/10-201(e)(iv) (West 2010).

¶ 83    Griffin originally had opposed all three quarters of 2008 *pro forma* capital additions as being neither reasonably certain to occur nor known and measurable under section 287. After considering additional information presented as part of the stipulation, Griffin agreed that the *pro forma* capital additions for the first two quarters of 2008 were appropriate because those projects were "summer critical" for the summer of 2008. However, the stipulation did not alter the Staff's opposition to the third-quarter 2008 *pro forma* capital adjustments. The Staff persisted in their conclusion that those adjustments were neither reasonably certain to occur nor determinable. Griffin explained to the Commission that ComEd's projected construction budgets and actual costs showed variances, which led him to conclude that those budgets could not support ComEd's argument that the challenged additions were reasonably certain to occur and were determinable. Based on Griffin's testimony and other evidence, the Commission accepted the *pro forma* capital adjustments for the first two quarters but not the third-quarter of 2008.

¶ 84    In the Refund Order, the Commission again cited Griffin's testimony regarding the uncertainty of ComEd's projected construction costs as support for excluding the third-quarter 2008 *pro forma* capital adjustments. ComEd essentially argues that its evidence should be accepted over the Staff's evidence, but that is not a basis for overturning the Commission's factual decision. ComEd's presentation of more witnesses and more pages of testimony does not compel the opposite conclusion.

¶ 85    ComEd also disputes the Commission's comment that ComEd had failed to address in surrebuttal testimony Griffin's continued opposition to the inclusion of the third-quarter 2008 plant additions. ComEd cites the testimony of ComEd witnesses Kathryn Houtsma and Stacie Frank, who stated that approval of the ComEd/Staff stipulation was a condition of ComEd's decision to forgo the inclusion of the third-quarter 2008 plant additions. Regarding those additions, Houtsma and Frank focused their testimony on their disagreement with another witness, Mr. Effron, on the issue of how the ComEd/Staff stipulation related to depreciation reserve and parallel increases to accumulated deferred income taxes relating to existing plant. Houtsma and Frank made conclusory statements that the evidence in the record supported including the third-quarter 2008 plant additions, but they offered no testimony to rebut Griffin's opinion that the challenged plant additions were neither reasonably certain to occur nor determinable. Further, ComEd does not cite to any other part of the record that would indicate an inaccuracy in the Commission's comment about ComEd's surrebuttal testimony.

¶ 86    Showing deference to the Commission, we conclude that substantial evidence in the record supports its decision to exclude from the rate base the third-quarter 2008 plant additions. See *ComEd*, 405 Ill. App. 3d at 398 ("substantial evidence" does not rise to the level of a preponderance of the evidence, but rather is evidence that a "reasoning mind would accept as sufficient to support a particular conclusion" (internal quotation marks omitted)).

¶ 87    Finally, we reject ComEd's claim that, because ComEd actually implemented certain third-quarter 2008 plant additions, the Commission erred in refusing to include the additions in the rate base. This argument rooted in hindsight fails for the same reason as ComEd's claim that its actual operating costs incurred during the refund period should be factored into the refund. Allowing ComEd to introduce new evidence on actual third-quarter 2008 plant additions would have been improper retroactive ratemaking in that it would have required reopening the proceedings to all parties for evidence on the entire 2007 Rate Order.

¶ 88                            IV. CONCLUSION

¶ 89    For the preceding reasons, the decision of the Commission is affirmed.

¶ 90    Affirmed.