(No. 62850.—

INDEPENDENT VOTERS OF ILLINOIS, Appellant, v.
THE ILLINOIS COMMERCE COMMISSION *et al.*
(Illinois Bell Telephone Company, Appellee).

*Opinion filed June 16, 1987.*

GOLDENHERSH, J., took no part.

Aram A. Hartunian, Robert M. Weissbourd and James M. Bradtke, of Hartunian, Futterman & Howard, of Chicago, for appellant.

Thomas P. Hester, Edward Butts and Michael J. Karson, of Chicago, for appellee.

Neil F. Hartigan, Attorney General, of Springfield (Hercules F. Bolos and David L. Nixon, Special Assistant Attorneys General, of Chicago), for the Illinois Commerce Commission.

Stephen J. Moore and Thomas H. Rowland, of Chicago, for *amicus curiae* Office of Public Counsel.

Alex Elson and Susan H. Walcoff, of Rosenthal &

Schanfield, of Chicago, for *amicus curiae* Citizens Utility Board.

JUSTICE WARD delivered the opinion of the court:

This appeal concerns utility rates which were originally set by order of the Illinois Commerce Commission in 1971. On an appeal involving the rates this court held that the Commission had improperly allowed certain expenses and deductions to the Illinois Bell Telephone Company (hereafter Bell) (*Illinois Bell Telephone Co. v. Illinois Commerce Com.* (1973), 55 Ill. 2d 461), and the matter was remanded for further proceedings. On remand, the Independent Voters of Illinois (hereafter the IVI), an intervenor, petitioned that all "overcharges" received by Bell under the invalid portions of the rate order be refunded to the utility's customers. The Commission ruled against the IVI, which appealed to the circuit court of Kane County. The circuit court's affirmance of the Commission's order was affirmed by the appellate court (139 Ill. App. 3d 957), and we allowed the IVI's petition for leave to appeal. 103 Ill. 2d R. 315.

In the first appeal, this court held that the Commission in its 1971 rate order had improperly allowed certain costs of Bell as operating expenses. (*Illinois Bell Telephone Co. v. Illinois Commerce Com.* (1973), 55 Ill. 2d 461, 486.) While that appeal was pending, Bell initiated a second proceeding before the Commission, seeking another, that is, an additional, general rate increase. The Commission, following the guidelines of permissible expenses set by this court on the original appeal, approved the second request for a rate increase. The first rate order was in effect during the litigation, including the appeal regarding it, and that rate order remained in effect until the second rate order became effective January 1, 1974. The Commission reopened proceedings in March 1975 upon remand of the first rate order, and at

that time the IVI asked the Commission to refund to Bell customers the amounts paid under the 1971 rate order that this court had held to have been improper. The IVI sought restitution for two periods: (1) from the time that the 1971 rate order took effect on August 11, 1972, through this court's reversal of the order on October 1, 1973; (2) alternatively, from the time of this court's reversal decision, October 1, 1973, to the time the Commission's second rate order became effective on January 1, 1974. The Commission rejected the IVI's argument for restitution, as did the circuit and appellate courts. Briefs *amici curiae* were filed by the Office of Public Counsel (hereafter Public Counsel), which supports the IVI's arguments in part, and the Citizens Utility Board (hereafter CUB), a nonprofit public group, which also supports a portion of the IVI's position.

We first address the IVI's contention that Bell customers should receive restitution for the time that the rate order was in effect, from August 11, 1972, to October 1, 1973, the time of this court's previous decision. Bell, according to the IVI, should be required to "disgorge" the rate amounts overpaid by its customers under the portions of the Commission's order this court held to be invalid. The IVI contends that the reparations remedy provided in section 72 of the Public Utilities Act (Ill. Rev. Stat. 1971, ch. 111⅔, par. 76) (the Act) does not preclude restitution of rates paid under a Commission order that was later judicially reversed. Section 72 provides that the Commission, after a hearing at which it has found that a public utility has charged an excessive or unjustly discriminatory amount for its product, commodity or service, may order the utility to make statutory reparation to the complainant. (Ill. Rev. Stat. 1971, ch. 111⅔, par. 76.) The IVI contends that restitution is a post-appeal remedy that should be available upon judicial reversal of erroneous rate orders through

section 68 of the Act (Ill. Rev. Stat. 1971, ch. 111⅔, par. 72), which is the authority for appellate review of Commission orders. Section 68 provides that a circuit court may review Commission actions to inquire into and determine the lawfulness and reasonableness of the rule, regulation, order, or decision. The Act, the IVI says, is silent about restitution, so it is not a prohibited remedy.

This appeal is brought under section 68 of the Act (Ill. Rev. Stat. 1971, ch. 111⅔, par. 72). Under the statute the review of Commission findings is limited to questions of whether the Commission acted within the scope of its authority, whether the finding is without any reasonable foundation in the evidence, or whether a constitutional right has been infringed by such findings. (*Citizens Utilities Co. v. Illinois Commerce Com.* (1971), 50 Ill. 2d 35, 39; *Village of Apple River v. Illinois Commerce Com.* (1960), 18 Ill. 2d 518, 522-25; *Chicago Junction Ry. Co. v. Illinois Commerce Com.* (1952), 412 Ill. 579, 585; see also Ill. Rev. Stat. 1985, ch. 111⅔, par. 10—201(e)(iv).) Section 68 of the Act (Ill. Rev. Stat. 1971, ch. 111⅔, par. 72) states that the Commission's findings and conclusions on questions of fact shall be held *prima facie* to be true and the Commission's order or decision shall not be set aside "unless it clearly appears that the finding of the Commission was against the manifest weight of the evidence presented to or before the Commission" on the question. Ill. Rev. Stat. 1971, ch. 111⅔, par. 72; see also *Village of Apple River v. Illinois Commerce Com.* (1960), 18 Ill. 2d 518, 523; *United Cities Gas Co. v. Illinois Commerce Com.* (1971), 48 Ill. 2d 36, 40; *Illinois Commerce Com. ex rel. Lumaghi Coal Co. v. Chicago & Eastern Illinois Ry. Co.* (1928), 332 Ill. 243, 249.

The Commission contends the IVI has waived its right for restitution because it failed to raise the issue in its petition for rehearing before the Commission. Section

67 of the Act (Ill. Rev. Stat. 1971, ch. 111⅔, par. 71) prohibits appeals upon grounds not raised in the application for rehearing. A review of the record shows the IVI did raise the question of restitution in its petition for rehearing in stating that it was "not simply requesting 'reparations'," but was also seeking refunds of amounts overpaid. We judge that the IVI sufficiently articulated its claim for restitution in the petition to preserve it for appeal, and we now consider the merits of the IVI's argument that Bell customers are entitled to the amounts they paid under the portions of the 1971 rate order that were held improper by this court in the previous appeal.

The appellate court, relying on *Mandel Brothers, Inc. v. Chicago Tunnel Terminal Co.* (1954), 2 Ill. 2d 205, held that restitution is not an available remedy to recover the invalid portion of the rates paid under the 1971 rate order. *Mandel Brothers*, in the appellate court's view, made clear that the common law right to recover reparations for unreasonable charges by a public utility has been superseded by section 72 of the Act (Ill. Rev. Stat. 1971, ch. 111⅔, par. 76). We agree that section 72 would have been the proper remedy under the circumstances for securing refunds by utility customers. Section 72 specifies that the Commission may award reparations when a utility has charged an excessive or unjustly discriminatory amount for its product or service. *Mandel Brothers* specifically determined that public utility rates that have been approved by the Commission, after a finding that they are just and reasonable, cannot be deemed "excessive" for the purposes of awarding reparations, even if that rate order is set aside upon judicial review. (*Mandel Brothers, Inc. v. Chicago Tunnel Terminal Co.* (1954), 2 Ill. 2d 205, 209; see also *Barry v. Commonwealth Edison Co.* (1940), 374 Ill. 473, 477; *Anzinger v. Illinois State Medical Inter-Insurance Exchange* (1986), 144 Ill. App. 3d 719, 723-24.) *Mandel*

*Brothers* held that a Commission-approved rate cannot be held to be excessive within the meaning of section 72 because such a determination would contradict the scheme of the Act and, in particular, section 71 (Ill. Rev. Stat. 1971, ch. 111⅔, par. 75). Section 71 specifically addresses the question of the rate to be charged during the pendency of an appeal. Section 71 provides that "[t]he pendency of an appeal shall not of itself stay or suspend the operation of the rule, regulation, order or decision of the Commission, but during the pendency of the appeal the circuit court, or the Supreme Court, *** in its discretion may stay or suspend, in whole or in part, the operation of the Commission's *** order ***." We reaffirm the *Mandel Brothers* holding that it would contradict the statute for this court to conclude that a Commission-approved rate order, which is later reversed by a reviewing court, is excessive within the meaning of section 72. The Act requires utility companies to charge only those rates that are on file with the Commission and in effect at the time (Ill. Rev. Stat. 1971, ch. 111⅔, par. 37), and that are just and reasonable (Ill. Rev. Stat. 1971, ch. 111⅔, par. 32). Bell was required to collect the rates approved in the Commission's 1971 order because the Commission had set the rate, after a hearing as to its reasonableness, and the IVI did not seek to stay or suspend the operation of the order. Section 71 establishes that the rate order is effective during the pendency of an appeal, unless a stay or suspension of the order, in part or whole, is obtained. The IVI does raise challenges to the stay provision, which we will address later.

The IVI argues that *Mandel Brothers* is not applicable here because that case dealt with a reparations claim, while this appeal involves the duty of the Commission to rectify its errors on remand by granting restitution. Alternatively, the IVI says that if the Commission does not have the power to order restitution, then this

court should exercise its equitable powers to order restitution. The Commission and Bell argue, and the appellate court held, that the Commission is prohibited from granting restitution because reparations under section 72 is the only statutory remedy. The Commission also says that, since this appeal is brought under section 68 of the Act (Ill. Rev. Stat. 1971, ch. 111⅔, par. 72), this court is limited to the statutory scope of review. It says that reviewing courts do not exercise equitable powers in review of Commission orders, and thus restitution cannot be ordered here. Whether the administrative remedies of the Act preclude the Commission or this court from granting restitution for the period before the rate order was judicially reversed need not be resolved, as restitution is not called for under the circumstances. Restitution is an equitable remedy that is sought before a court, and the basis of such liability is unjust enrichment to the defendant. (G. Palmer, Restitution, sec. 1.1, at 2 (1978).) Restitution is compelled against one who has obtained money or property without authority and usually where an adequate legal remedy does not exist for the aggrieved party. (G. Palmer, Restitution, sec. 1.6, at 35 (1978).) This court has already determined that a Commission-approved rate order cannot be deemed excessive for reparations purposes if the Commission found it reasonable and just, although it is later set aside by a reviewing court, because section 71 provides that the order shall remain in effect during the pendency of an appeal, unless it is stayed or suspended. Bell, as a public utility, was prohibited from charging more or less than the rates set by the Commission (Ill. Rev. Stat. 1971, ch. 111⅔, par. 37) and was statutorily required to follow the 1971 rates set by the Commission. Since Bell was required by statute to collect the new rates, which were found just and reasonable by the Commission, Bell has

received no unlawful charges of which it should be "disgorged" under restitutional principles.

The IVI also argues that if *Mandel Brothers* forbids refunds to Bell customers in this situation, it should be overruled. The IVI acknowledges that *Mandel Brothers* concluded that a party must have obtained a stay or suspension, in whole or in part, to avoid payments under rates that were approved by the Commission. The legislature, the IVI argues, could not have intended stay orders to be the only method available to avoid the permanent effects of rate orders that are later judicially reversed. Since our decision in *Mandel Brothers*, the legislature has amended the Act (Ill. Rev. Stat. 1985, ch. 111⅔, par. 1—101 *et seq.*, eff. Jan. 1, 1986). The Act's stay provisions were amended so that a bond shall not be required in the case of any stay or suspension granted on application of the State, represented by the Attorney General or Public Counsel (Ill. Rev. Stat. 1985, ch. 111⅔, par. 10—204). The legislature did not amend the Act to change this court's construction in *Mandel Brothers* that the Act prohibits refunds of amounts overpaid by utility customers during the pendency of an appeal, unless the rate order had been stayed or suspended. Too, the legislature has twice declined to enact proposals that would have allowed the Commission to adjust temporarily rates to provide the public utility with the increased or decreased revenue it would have received during the pendency of an appeal if the final order as originally promulgated by the Commission had been in accord with the opinion of the highest court to which the appeal was taken. (H.B. 1173, 80th Ill. Gen. Assem., 1977-78; H.B. 2059, 81st Ill. Gen. Assem., 1979-80.) Either of these legislative proposals would, if enacted, have amended the Act differently from the construction given by this court in *Mandel Brothers*. The legislature's reenactment of a statute, which has been ju-

dicially construed, should be viewed as an adoption of that particular construction. (2A Sutherland, Statutory Construction sec. 49.10, at 408 (1984 rev. ed.); see also *Union Electric Co. v. Illinois Commerce Com.* (1979), 77 Ill. 2d 364, 380.) "The construction this court has placed upon the Act has in effect become a part of the Act, and a change in the construction by this court would amount to amending the statute. The power to accomplish this does not lie in the courts." *Union Electric Co. v. Illinois Commerce Com.* (1979), 77 Ill. 2d 364, 381.

The IVI, *amicus* CUB, and *amicus* Public Counsel claim that the stay provision of the Act is unconstitutional because no customer or group can reasonably be expected to furnish a bond that would be sufficient to make the utility whole in the event that the stay is eventually reversed. The IVI says it was not financially able to post a bond pursuant to section 71 of the Act to stay the Commission's order and, therefore, was not able to avail itself of the remedies under the Act. CUB and Public Counsel contend that the appellate court's decision raises constitutional questions under the due process clause of the fourteenth amendment of the United States Constitution and article I, section 2, of the Constitution of Illinois. CUB also contends that the General Assembly cannot constitutionally deprive the courts of providing a remedy under these circumstances. CUB, however, concedes that this court need not address the constitutional issue as there is no provision in the Act purporting to take away equitable jurisdiction. The Commission and Bell say that the IVI waived this argument because it had not sought a stay of the original rate order and also because it had not raised the constitutionality issue before the Commission or in its petition for rehearing as required by section 68 (Ill. Rev. Stat. 1971, ch. 111⅔, par. 72). The IVI did, in one of its memoranda before the Commission, question the constitutionality of section 71

as violative of the fifth and fourteenth amendments, but it did not specify this point as a ground for rehearing, which would have preserved it for review. We agree with the appellate court's disposition of this argument: that it was waived by the IVI's failure to either seek a stay or raise the issue before the Commission. *People v. Lang* (1986), 113 Ill. 2d 407, 469; *Harris Trust & Savings Bank v. Duggan* (1983), 95 Ill. 2d 516, 527.

The IVI, relying on decisions from other jurisdictions, also argues that courts have fashioned equitable relief for customers when they have invalidated rate orders and no other legal remedies are available. The courts in two of the decisions cited by the IVI, *Mountain States Telephone & Telegraph Co. v. Arizona Corporation Com.* (Ariz. App. 1979), 124 Ariz. 433, 604 P.2d 1144, and *Northwestern Bell Telephone Co. v. State* (1974), 299 Minn. 1, 216 N.W.2d 841, specifically distinguished *Mandel Brothers*, noting that the public utility statutes in those two jurisdictions do not have provisions for a stay, as does our act. Decisions cited in other jurisdictions construed public utility acts significantly different from our act. Too, where restitution was allowed, it was primarily based on the court's finding of unlawful gains to the utility, whereas we cannot say that Bell's collection of rates under the 1971 rate order was unlawful, as the utility was required by statute to charge only the rates approved by the Commission unless a stay or suspension of the rate had been obtained.

The IVI next argues that, even if Bell customers are not entitled to restitution for the period preceding the date when the 1971 rate order was reversed by this court, the customers should at least be able to recover refunds for the time that the rate order remained in effect following this court's decision. The parties agree that *Mandel Brothers* did not address the issue of the rates that are effective when a reviewing court reverses

a Commission order and no stay has been obtained. In the IVI's view, once a Commission order is reversed, the order is no longer valid. The appellate court decided that a public utility is entitled to charge rates in reliance upon a Commission order until replaced by further order of the Commission. (139 Ill. App. 3d 957, 964.) The appellate court concluded that its decision provides for an orderly transition from one rate to another. The IVI says this decision is erroneous because the appellate court reasoned that either the reversed order must remain in effect or it must be replaced by the last prior valid order. The IVI submits that the proper solution is, after a portion of the rate order is found invalid by a court, to void only the erroneous portion and the proper portion should remain in effect. The IVI says this can be done if the Commission promptly sets a new rate and orders refunds for the period between reversal of the old rates and the effective date of the new rates.

We consider that the IVI correctly states that Bell was not entitled to the full amount allowed under the 1971 rate order after portions of it were held invalid by this court. The judgment of a reviewing court is final when entered. (*Long v. City of New Boston* (1982), 91 Ill. 2d 456, 462; *PSL Realty Co. v. Granite Investment Co.* (1981), 86 Ill. 2d 291, 304-05.) The judgment is final upon all questions decided, and if the cause is remanded, the circuit court can take only such action that conforms to the judgment of the reviewing court. (*PSL Realty Co. v. Granite Investment Co.* (1981), 86 Ill. 2d 291; see also *Illinois Consolidated Telephone Co. v. Aircall Communications, Inc.* (1981), 101 Ill. App. 3d 767, 770.) As such, this court's decision holding that certain expenses and deductions allowed in the rate order were improper was final. That portion of the rate order was invalid from the time this court entered its judgment. The portion of the rates that was held to be erroneously set by the Commis-

sion should be refunded to customers who paid them from the time of this court's previous decision until the new rates took effect January 1, 1974. To hold otherwise would allow Bell to continue collecting the unlawfully increased rate and benefiting from such, without a remedy to the customer, until the Commission conducts hearings and determines a new rate base. The Commission conducted hearings here in the same month that the court announced its decision, and a new rate went into effect within the month that this court issued its mandate. The rate-making process, however, may be lengthy, and a utility could be tempted to extend that process if it continued to benefit from the increased rate without the risk that it would have to refund customers overcharges after a judicial reversal. During the interval between reversal and the time a new rate schedule is approved by the Commission and takes effect, Bell may continue to charge the challenged rates, subject to refunds for the portions that were held improper by this court (see *In re Application of Hawaii Electric Light Co.* (1979), 60 Hawaii 625, 649, 594 P.2d 612, 627), or it would appear that the Commission may immediately set temporary rates under its powers in section 36 of the Act (Ill. Rev. Stat. 1971, ch. 111⅔, par. 36).

The Commission argues that the appellate court's decision on this issue should be affirmed and that a rate order should remain in effect after judicial reversal because of the comprehensive legislative scheme controlling utility rates. The Commission correctly observes that section 37 of the Act (Ill. Rev. Stat. 1971, ch. 111⅔, par. 37) prohibits the public utility from charging more or less than the rates set forth in Commission-approved schedules. The Commission argues these rates remain in effect even after this court holds that a portion is unlawful. The Act specifically authorizes the utility company to collect the rates during the pendency of an

appeal, unless a stay or suspension is obtained. But once that rate order is set aside on appeal, the utility should not continue to benefit from what has been determined to be unlawful portions of a rate increase. *Peoples Gas Light & Coke Co. v. Slattery* (1939), 373 Ill. 31, 42, *appeal dismissed sub nom. Peoples Gas Light & Coke Co. v. Hart* (1940), 309 U.S. 634, 84 L. Ed. 991, 60 S. Ct. 724, made clear that this court may exercise its equitable powers when an appropriate remedy is not provided in the Act (see also *Getto v. City of Chicago* (1979), 77 Ill. 2d 346, 357). The Act does not specifically provide a remedy for this situation, although it provides for a court to review the lawfulness and reasonableness of Commission proceedings (Ill. Rev. Stat. 1971, ch. 111⅔, par. 68). Too, the unavailability of a refund would force the consumer to pay a rate that has been held to be in excess of that established under proper criteria and would raise due process questions. *Appeal of Granite State Electric Co.* (N.H. 1980), 120 N.H. 536, 540, 421 A.2d 121, 123 (allowing refunds for the entire period that the rate order was in effect).

The Commission also argues that, because rate-making is legislative in nature, the Commission, not the courts, is empowered to set public utility rates. The Commission is statutorily authorized to change rates and, because rate-making is legislative in nature, rates can be changed only prospectively. (*Mandel Brothers, Inc. v. Chicago Tunnel Terminal Co.* (1954), 2 Ill. 2d 205, 208-12; see also *City of Los Angeles v. Public Utilities Com.* (1972), 7 Cal. 3d 331, 497 P.2d 785, 102 Cal. Rptr. 313; *Democratic Central Committee v. Washington Metropolitan Area Transit Com.* (D.C. Cir. 1973), 485 F.2d 786, 823, *cert. denied* (1974), 415 U.S. 935, 39 L. Ed. 2d 493, 94 S. Ct. 1451.) This rule against retroactive rate-making, the Commission urges, prevents refunds after a rate order is reversed by a reviewing court. We dis-

agree. The applicable sections of the Act allowing for review of Commission proceedings provide that a court may determine the lawfulness or reasonableness of a rule, regulation, order or decision and may vacate, modify or otherwise hold an order invalid (Ill. Rev. Stat. 1971, ch. 111⅔, pars. 68, 71). The refund here is a result of a direct, statutorily authorized, review of the Commission order. This case was remanded to the Commission previously to correct the erroneous portion of the rates, not for original rate-making. (*Mountain States Telephone & Telegraph Co. v. Public Utilities Com.* (Colo. 1972), 180 Colo. 74, 81, 502 P.2d 945, 948.) The function of the courts in reviewing Commission proceedings would be meaningless if no remedy could be provided after the court holds that a Commission-approved rate order included allowance of improper expenses and deductions for the utility company.

Bell also argues that the 1971 rates that had been approved by the Commission were actually too low to provide the revenue it needed, and therefore it says the continued collection of the 1971 rates after reversal produced no unjust enrichment that would be the basis of refunds to its customers. The Commission, in setting new rates after reversal of the 1971 rate order, allowed Bell a rate increase totaling $58.6 million. Bell overlooks, though, that it was allowed to collect from October 1, 1973, the date of this court's previous decision,. through January 1, 1974, the improper portions of the previous rate schedule. The refunds ordered here should be comprised of the difference between the original rates set in the 1971 rate order and the rates that would have been charged if they had been set in accordance with the views expressed in the previous decision for the period between reversal by this court and the effective date of the new rate order.

We also note that preparing and sending refund checks to the thousands of customers served by Bell may not be the most cost-effective method of effectuating our decision, and we perceive no ground for objection if credits to the customers' monthly bills were used, if the Commission deems this to be a preferable procedure. See *Appeal of Granite State Electric Co.* (N.H. 1980), 120 N.H. 536, 540, 421 A.2d 121, 124.

For the reasons given here, the judgments of the appellate and circuit courts are affirmed as to those portions holding that there is no entitlement to refunds for the period preceding the reversal of the rate order by this court; and the judgments are reversed as to those portions denying refunds for the period following reversal of the rate order by this court. This cause is remanded to the Commission with directions to order Bell to provide refunds or credits in accordance with the views expressed herein.

*Appellate court affirmed in part and reversed in part; circuit court affirmed in part and reversed in part; cause remanded, with directions.*

JUSTICE GOLDENHERSH took no part in the consideration or decision of this case.