# Illinois Official Reports

## Supreme Court

---

**State of Illinois ex rel. Pusateri v. Peoples Gas Light & Coke Co.,**
**2014 IL 116844**

---

| | |
|---|---|
| Caption in Supreme Court: | THE STATE OF ILLINOIS *ex rel.* JOSEPH PUSATERI, Appellee, v. THE PEOPLES GAS LIGHT AND COKE COMPANY, Appellant. |
| Docket No. | 116844 |
| Filed | November 20, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | A circuit court complaint was properly dismissed as raising ratemaking issues which are within the exclusive jurisdiction of the Illinois Commerce Commission where it alleged that a gas utility company's failure to make accurate reports to the Commission caused rates to be higher and the State, as a customer, to pay more—Whistleblower Act and False Claims Act. |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Raymond W. Mitchell, Judge, presiding. |
| Judgment | Appellate court judgment reversed.<br>Circuit court judgment affirmed. |

| Counsel on Appeal | Michael M. Conway, David B. Goroff, Lisa M. Noller, Theodore T. Eidukas and John L. Litchfield, of Foley & Lardner LLP, and J. Timothy Eaton, of Taft Stettinius & Hollister LLP, all of Chicago, for appellant. |
| --- | --- |
| | David Novoselsky, Edward J. Stawicki and Jonathan P. Novoselsky, of Novoselsky Law Offices, of Chicago, for appellee. |
| | John E. Rooney, Anne W. Mitchell and Conor B. Ward, of Rooney Rippie & Ratnaswamy LLP, of Chicago, for *amici curiae* Ameren Illinois and Nicor Gas Company. |
| | John J. Hamill and Ramon Villalpando, of Jenner & Block LLP, Thomas S. O'Neill and Anastasia O'Brien, all of Chicago, for *amicus curiae* Commonwealth Edison Company. |

| Justices | CHIEF JUSTICE GARMAN delivered the judgment of the court, with opinion. |
| --- | --- |
| | Justices Freeman, Thomas, Kilbride, Karmeier, Burke, and Theis concurred in the judgment and opinion. |

## OPINION

¶ 1      Plaintiff Joseph Pusateri filed a complaint under the False Claims Act[1] alleging defendant Peoples Gas Light and Coke Company (PG) used falsified gas leak response records to justify a fraudulently inflated natural gas rate before the Illinois Commerce Commission (Commission). As a customer, the State of Illinois would have paid such fraudulently inflated rates, making PG liable under the False Claims Act. The Cook County circuit court dismissed Pusateri's complaint with prejudice, finding that as a matter of law, there was no causal connection between the allegedly false reports and the Commission-approved rates. The appellate court reversed, construing the complaint's allegations liberally to find PG could have submitted the safety reports in support of a request for a rate increase, despite not being required to do so under the Administrative Code. Accordingly, the appellate court found Pusateri had presented enough of a viable claim to survive dismissal. 2013 IL App (1st) 120972-U.

---

[1]At the time Pusateri filed his suit, the Illinois False Claims Act was known as the Whistleblower Reward and Protection Act. 740 ILCS 175/1 (West 2008). The textual amendments that accompanied the 2010 name change do not affect our analysis of this case. Pub. Act 96-1304 (eff. July 27, 2010) (amending 740 ILCS 175/1 *et seq.* (West 2008)). The parties have referred to the Whistleblower Reward and Protection Act as the Whistleblower Act, but that is the proper name of another statute. 740 ILCS 174/1 (West 2008). To avoid confusion, we use the statute's current name, the Illinois False Claims Act. 740 ILCS 175/1 (West 2012).

¶ 2    This court granted PG's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. July 1, 2013). We also permitted the Commonwealth Edison Company, the Ameren Illinois Company, and the Northern Illinois Gas Company to file briefs *amici curiae* on behalf of defendant PG. Ill. S. Ct. R. 345 (eff. Sept. 20, 2010). For the reasons that follow, we reverse the judgment of the appellate court and affirm the judgment of the circuit court.

¶ 3                                    BACKGROUND

¶ 4    Pusateri is a former PG employee who filed a sealed complaint against the company under the False Claims Act on September 2, 2009. 740 ILCS 175/1 *et seq.* (West 2008). In his complaint, Pusateri alleged PG must file a report with the Commission any time its response to a possible gas leak, from receipt of the call to arrival of the maintenance crew, takes more than one hour. In late 2001, Pusateri rose to the level of service supervisor. Pusateri alleged that his superiors then instructed him to change computer logs to reflect a better response time, so that no Commission report would be filed, and that he and other managers would alter such records. Pusateri further alleged that these falsified reports were used by PG to help justify rate increases in Commission rate-setting proceedings. Pusateri's complaint contained two counts, premised on separate subsections of the False Claims Act. The first count argued the allegedly false safety records were themselves a "false or fraudulent claim for payment or approval" under section 3(a)(1) of the False Claims Act; the second count argued the allegedly false safety records were "false record[s] or statement[s] to get a false or fraudulent claim paid or approved" under section 3(a)(2). 740 ILCS 175/3(a)(1)-(2) (West 2008). No particular rate increase or order was specified in the complaint. The State, as a purchaser of natural gas, would have paid any such inflated rate.

¶ 5    The Attorney General declined to proceed with the action. See 740 ILCS 175/4 (West 2008). On April 27, 2011, the circuit court ordered Pusateri to conduct the action on behalf of the State as plaintiff. The court ordered the complaint unsealed and served on PG. On February 29, 2012, the circuit court dismissed Pusateri's complaint with prejudice, pursuant to section 2-615 of the Code of Civil Procedure. 735 ILCS 5/2-615 (West 2008). The circuit court looked to the definition of a claim for payment under the False Claims Act, which included "any request or demand, whether under a contract or otherwise, for money or property" made to the State or someone to be reimbursed by the State. 740 ILCS 175/3(c) (West 2008). Noting the requirement of a causal nexus between the false claim and payments by the State, the circuit court examined the Illinois Administrative Code to conclude the Commission would never look at safety reports in deciding a rate. See 83 Ill. Adm. Code §§ 285.305, 285.315 (2011). Therefore, there could be no causal connection between a false safety report and a Commission rate approval.

¶ 6    The appellate court reversed. It held that although PG was not required to use its natural gas leak reports in support of a rate increase, it may have done so. 2013 IL App (1st) 120972-U, ¶ 21. Construing the complaint liberally, the appellate court found the alleged false reports could form the basis of a claim under section 3(a)(2), submitting a false record in support of a claim for payment. *Id.* ¶ 22. It also held that Pusateri's complaint alleged PG had submitted fraudulent bills to the State, making the basis of a claim under section 3(a)(1) for a false or fraudulent claim. *Id.* ¶ 28. One justice dissented, on the basis that the Commission's legislative rate making is a regulatory act, whereas the False Claims Act is

- 3 -

concerned with procurement and the government's bills. *Id.* ¶¶ 42-46 (Palmer, J., dissenting).

¶ 7                                                    ANALYSIS

¶ 8        A section 2-615 motion to dismiss challenges the legal sufficiency of a complaint. *Kanerva v. Weems*, 2014 IL 115811, ¶ 33. A court deciding a section 2-615 motion must accept all well-pleaded facts in the complaint as true, and it should dismiss the complaint only where it is apparent no set of facts could be proven that would entitle the plaintiff to recover. *Id.* We review *de novo* an order granting a motion to dismiss under section 2-615. *Id.* Whether Pusateri's complaint is a proper one under the False Claims Act is a question of statutory interpretation. The primary objective of statutory interpretation is to give effect to the legislature's intent, which is best indicated by the plain language of the statute itself. *Citizens Opposing Pollution v. ExxonMobil Coal U.S.A.*, 2012 IL 111286, ¶ 23. The court may affirm on any basis appearing in the record. *In re Veronica C.*, 239 Ill. 2d 134, 151 (2010).

¶ 9        Before this court, PG reiterates its prior arguments that Pusateri has not stated a claim within the meaning of the False Claims Act, or within the analogous federal False Claims Act. 31 U.S.C. § 3729 *et seq.* PG argues first that any false reports to the Commission would not be a claim for payment, and any falsity therein would be mere false statements unconnected to any claim for payment. PG argues second that there is no causal nexus between the allegedly false reports and the State's gas bills—both because changing the logs would mean no report was generated at all, and because the Commission would not rely upon gas leak reports in setting rates anyway. Pusateri responds that a false record in support of a claim for payment is sufficient, even where the State is only a partial payor of the claim, relying largely on *People ex rel. Levenstein v. Salafsky*, 338 Ill. App. 3d 936 (2003). Pusateri thus argues the gas leak reports were sufficiently causally linked to the State's payment of gas bills. Pusateri also argues that the Commission has considered gas leak reports in the past, relying chiefly on *People ex rel. Madigan v. Illinois Commerce Comm'n*, 2011 IL App (1st) 100654. Pusateri argues that the Commission's consideration of prospective safety improvements in light of a proposed infrastructure cost recovery rider in *Madigan* indicates the Commission will consider gas leak reports in setting rates, irrespective of the reports' absence in that portion of the Illinois Administrative Code.

¶ 10       PG additionally argues that Pusateri's complaint is a prohibited collateral attack on a Commission rate order. See, *e.g.*, *Peoples Gas Light & Coke Co. v. Buckles*, 24 Ill. 2d 520, 528 (1962). Pusateri counters that PG has forfeited this argument by not raising it in the circuit or appellate courts. Pusateri additionally argues that his complaint does not seek to "adjust or countermand any rate making decisions of" the Commission, because he is asking the court only to review PG's conduct and order disgorgement. Pusateri also contends that arguments against applying the False Claims Act to PG's safety reports to the Commission are a constitutional attack on the False Claims Act. In reply, PG notes that no party has argued the False Claims Act is unconstitutional, facially or as applied to the Commission.

¶ 11                         Jurisdiction of the Illinois Commerce Commission

¶ 12       The Public Utilities Act creates the Illinois Commerce Commission and charges it with "general supervision of all public utilities." 220 ILCS 5/2-101, 4-101 (West 2008). "The

Commission is the administrative agency responsible for setting the rates utilities charge their customers." *United Cities Gas Co. v. Illinois Commerce Comm'n*, 163 Ill. 2d 1, 11 (1994). The Commission has "exclusive jurisdiction over rates" under the Public Utilities Act. *Sheffler v. Commonwealth Edison Co.*, 2011 IL 110166, ¶ 41 (citing 220 ILCS 5/9-252 (West 2006)). The Commission establishes rates based on its finding such rates are "just and reasonable." 220 ILCS 5/9-201(c) (West 2008). In a rate-setting process before the Commission, the regulated utility bears the burden of proving the "justness and reasonableness of the proposed rates." *Id.* The Public Utilities Act also prohibits a utility from charging a rate other than one approved by the Commission, or from offering a refund. 220 ILCS 5/9-240 (West 2008) (providing that, "[e]xcept as in this Act otherwise provided, no public utility shall charge *** a greater or less or different compensation for any product *** than the rates or other charges applicable to such product *** as specified in its schedules on file and in effect at the time, *** nor shall any such public utility refund or remit, directly or indirectly, in any manner or by any device, any portion of the rates or other charges so specified"). The Commission may not make rates retroactively or for single issues (*Business & Professional People for the Public Interest v. Illinois Commerce Comm'n*, 146 Ill. 2d 175, 195 (1991)), but the Commission may order a refund where it concludes a utility has charged an excessive or unjustly discriminatory rate. 220 ILCS 5/9-252 (West 2008).

¶ 13    The circuit and appellate courts have jurisdiction to review administrative agency actions only as provided by statute. Ill. Const. 1970, art. VI, §§ 6, 9. The Public Utilities Act provides for appeal of a Commission order directly to the appellate court, under standards deferential to the Commission's expertise. See 220 ILCS 5/10-201(e) (West 2008).

> "An order of the Commission will be reversed only if it is outside the jurisdiction of the Commission or is not supported by substantial evidence, or if the proceedings or manner in which the order was arrived at violated the State or Federal Constitutions or relevant laws, to the prejudice of the appellant. *** Apart from examining whether the Commission acted outside the scope of its constitutional or statutory authority, a reviewing court is limited to determining whether the findings of the Commission are against the manifest weight of the evidence." *United Cities Gas Co.*, 163 Ill. 2d at 12.

¶ 14    Rate-setting is a legislative function, not a judicial one. *Business & Professional People*, 146 Ill. 2d at 196. "In the rate-making scheme, the Commission and not the court is the fact-finding body." *Id.* "On appeal from an order of the Commission, its findings of fact are to be considered *prima facie* true; its orders are considered *prima facie* reasonable; and the burden of proof on all issues raised in an appeal is on the appellant." *United Cities Gas Co.*, 163 Ill. 2d at 11.

¶ 15    When the court reverses a Commission rate order, it does not set a new rate. See, *e.g.*, *Business & Professional People for the Public Interest v. Illinois Commerce Comm'n*, 136 Ill. 2d 192, 242 (1989). Ordinarily, where a Commission order approving a rate increase is reversed, and the rate increase has not been stayed pending litigation, ratepayers are not entitled to any refund for excess charges collected between the rate's effective date and reversal. *Id.* This court has previously ordered a utility to refund excess money collected after we had reversed the applicable rate order, but only as "a result of a direct, statutorily authorized, review of the Commission order." *Independent Voters of Illinois v. Illinois*

*Commerce Comm'n*, 117 Ill. 2d 90, 105 (1987). Such refunds were available for charges collected only after the court held "that a Commission-approved rate order included allowance of improper expenses and deductions for the utility company." *Id.* In *Independent Voters*, the court declined to order disgorgement where the amounts collected under the Commission-approved rate were not unlawfully obtained. As noted above, the court considered the question only upon "direct, statutorily authorized" review. *Id.* The Commission's orders within its statutory authority are "not subject to collateral attack." *Peoples Gas Light & Coke Co. v. Buckles*, 24 Ill. 2d 520, 528 (1962).

¶ 16    The legislature enacted the False Claims Act in 1991, long after the establishment of the Commission's exclusive rate-setting jurisdiction. See Pub. Act 87-662 (eff. Jan. 1, 1992). The False Claims Act allows the Attorney General or a private individual to bring a "civil action" on behalf of the State for false claims. See 740 ILCS 175/4 (West 2008). The False Claims Act enumerates certain individuals and circumstances to which it does not apply. 740 ILCS 175/4(e)(1)-(2) (West 2008) (stating "No court shall have jurisdiction over an action" between members of the Guard arising from service in the Guard, or over an action by an individual against a member of the legislature, judiciary, or other exempt official if based on information known to the State at the time the action was brought). No part of the False Claims Act enlarges the subject matter jurisdiction of the circuit courts. Nothing in the False Claims Act indicates an intent to abridge or disturb the Commission's exclusive jurisdiction.

¶ 17                          Reparations as Distinguished From Civil Damages

¶ 18    This court has recently examined which causes of action against a regulated utility are subject to the exclusive jurisdiction of the Commission. Claims for reparations are subject to the exclusive jurisdiction of the Commission. *Sheffler*, 2011 IL 110166, ¶ 41 ("It has long been recognized that the 'evident intent and purpose of the legislature in providing a method by which reparation may be recovered and in requiring that an application therefor shall be first made to the commission, precludes an action at law for such reparation until the commission has heard a claim therefor.' " (quoting *Terminal R.R. Ass'n of St. Louis v. Public Utilities Comm'n*, 304 Ill. 312, 317 (1922))). In *Sheffler*, we noted "a claim is for reparations when the essence of the claim is that a utility has charged too much for a service, while a claim is for civil damages when the essence of the complaint is that the utility has done something else to wrong the plaintiff." *Id.* ¶ 42 (citing *Flournoy v. Ameritech*, 351 Ill. App. 3d 583, 585 (2004)).

¶ 19    At its heart, Pusateri's complaint alleges PG used fraudulent means to get the State (and others) to pay too much for natural gas. While the False Claims Act could subject PG to civil penalties of $5,500 to $11,000, PG would also be subject to paying treble damages for its actions. 740 ILCS 175/3(a) (West 2008). Pusateri, as plaintiff, could share in 25% to 30% of the civil penalty and damages awarded. 740 ILCS 175/4(d)(2) (West 2008). Though the remedy Pusateri seeks is a mix of penalty and damages, the sole reason the alleged falsehoods might be actionable under the False Claims Act is that they would have induced the State to pay too much for PG's natural gas. See 740 ILCS 175/3(a)(1)-(7) (West 2008) (establishing liability for false claims, actions in support of false claims, and other actions used to deprive the State of property to which it is entitled). Pusateri's complaint is one for reparations, and it is subject to the exclusive, original jurisdiction of the Commission.

¶ 20        Pusateri's complaint in the circuit court also constitutes a prohibited collateral attack on a Commission rate order. It is not possible to determine how much PG's alleged safety-related fraud increased its rate without determining what its rate should have been without any false reports. At oral argument, Pusateri suggested this difficulty could be resolved through the testimony of expert witnesses, who could opine on how much PG's rate might have been inflated by fraudulent reports. The use of expert witnesses would not resolve the defect in this procedure—the circuit court would simply be asking experts to exercise the judgment statutorily reserved to the Commission. The court would then exercise the rate-setting authority reserved to the Commission, then order a refund outside of "direct, statutorily-authorized, review of the Commission order." *Independent Voters*, 117 Ill. 2d at 105. The circuit court is without jurisdiction to offer such remedies.

¶ 21                                                    Forfeiture
¶ 22        Pusateri has argued that PG forfeited the issue of a collateral attack on a Commission rate order, by not raising it below. Issues not raised below may be forfeited, meaning they are not properly before the court exercising appellate review. See, *e.g.*, *City of Champaign v. Torres*, 214 Ill. 2d 234, 240 n.1 (2005). Forfeiture does not apply to questions of subject matter jurisdiction, however. *People ex rel. Madigan v. Illinois Commerce Comm'n*, 231 Ill. 2d 370, 387 (2008) (describing forfeiture argument as "ultimately irrelevant, as the issue in this case is one of jurisdiction, which any reviewing court has an obligation to consider" (citing *Franson v. Micelli*, 172 Ill. 2d 352, 355 (1996))). The prohibition against collateral attacks on Commission rate orders concerns the court's ability to adjudicate the controversy and to offer relief. *People v. Hughes*, 2012 IL 112817, ¶ 20 ("A court's subject matter jurisdiction relates to 'the power of a court to hear and determine cases of the general class to which the proceeding in question belongs.' " (quoting *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 334 (2002))). Outside the administrative review prescribed by section 10-201, the circuit court lacked subject matter jurisdiction to adjudicate the central question of Pusateri's complaint: whether the rate set by the Commission was too high by virtue of the allegedly false gas leak reports. The circuit court was further unable to offer the relief sought: reparations, as augmented by the civil penalty provisions of the False Claims Act.
¶ 23        The legislature enacted the False Claims Act well after this court's rulings on the exclusive jurisdiction of the Commission. No part of the False Claims Act indicates the legislature intended to abridge that exclusive jurisdiction. This conclusion should not be mistaken for a conclusion that the legislature constitutionally cannot craft a remedy or whistleblower reward within the context of utility rates, as Pusateri suggested at oral argument. The legislature simply has not done so. This result emanates from analysis of the statutes, not our Constitution.

¶ 24               Whistleblower Protections and the Commission's Enforcement Role
¶ 25        At oral argument, Pusateri contended his complaint should proceed in the circuit court, lest he be subject to retaliation if not proceeding under "the Whistleblower Act." The False Claims Act provides relief for employees who suffer retaliation for bringing a False Claims Act action, including reinstatement with double back pay. 740 ILCS 175/4 (West 2008).

- 7 -

However, the argument that Pusateri would be unprotected without the False Claims Act is unpersuasive for a number of reasons. First, we note that Pusateri was already a former employee at the time he filed his complaint. Second, the absence of False Claims Act protections would have no impact on the application of the Whistleblower Act (740 ILCS 174/1 *et seq.* (West 2008)). The plain language of the Whistleblower Act would prohibit retaliation for making a good faith complaint to the Commission that a utility is violating the law. 740 ILCS 174/15 (West 2008) (prohibiting retaliation "against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation"). An employee who is the victim of retaliation for such a disclosure would be entitled to "all relief necessary to make the employee whole," including reinstatement with back pay and compensation for litigation expenses. 740 ILCS 174/30 (West 2008). This relief for retaliation under the Whistleblower Act is less plentiful than that offered under the False Claims Act, and the Whistleblower Act does not offer a whistleblower the opportunity to share in any recovery by the State, but the Whistleblower Act nonetheless prohibits retaliation. Compare 740 ILCS 175/4 (West 2008), and 740 ILCS 174/30 (West 2008); see 740 ILCS 175/4(d)(2) (West 2008).

¶ 26     Finding that the legislature did not intend the False Claims Act to apply to a Commission-set rate likewise does not create an enforcement gap. The legislature has granted the Commission an array of enforcement duties and powers. The Commission has the authority to pursue penalties, ranging from $1,000 to $500,000, for each misrepresentation to the Commission. 220 ILCS 5/5-202.1 (West 2008). The Commission has the duty to ensure regulated utilities obey the Public Utilities Act and other statutes, except where enforcement duties are "specifically vested in some other officer or tribunal." 220 ILCS 5/4-201 (West 2008). The Public Utilities Act directs the Commission to seek an injunction in the circuit court to prevent continued violation of the law. 220 ILCS 5/4-202 (West 2008). The Commission also has a procedure for receiving complaints from an individual or a wide range of entities; it may also initiate a complaint *sua sponte*. 220 ILCS 5/10-108 (West 2008). The Commission is to hear and enter orders on complaints within one year, in the absence of an agreed upon extension of time. *Id.* Where the Commission has failed to do so, a complainant may seek an order of *mandamus* only to compel the Commission to issue an order, further demonstrating the legislature's deference to Commission expertise. *Id.* Finally, the Commission may order a refund where it concludes a utility has charged an excessive or unjustly discriminatory rate. 220 ILCS 5/9-252 (West 2008).

¶ 27     As noted above, the legislature enacted the False Claims Act long after this court's relevant findings about the exclusive jurisdiction of the Commission, and we find no indication the legislature intended to abridge that jurisdiction. This conclusion is bolstered by the existence of a robust regulatory scheme already existing within the Public Utilities Act. Pusateri's interpretation of the False Claims Act would invite the circuit court to review a Commission rate order collaterally, in the absence of any specific grant of jurisdiction and less deferentially than the manner prescribed under the Public Utilities Act. The complaint cannot proceed in the circuit court, and dismissal was proper. Accordingly, we need not address the parties' arguments on whether the gas leak reports properly resemble a claim or a false record in support of a claim under the False Claims Act.

¶ 28                                    CONCLUSION

¶ 29      Because the circuit court was without jurisdiction to offer the relief sought by Pusateri's complaint, dismissal was appropriate. The judgment of the appellate court is reversed. The judgment of the circuit court is affirmed.

¶ 30            Appellate court judgment reversed.

¶ 31            Circuit court judgment affirmed.